788 A.2d 357

COMMONWEALTH of Pennsylvania, Department of Transportation, Appellant,

v.

Troy BEAM, Appellee.

Supreme Court of Pennsylvania.

Argued Nov. 13, 2001.

Decided Jan. 25, 2002.

Andrew S. Gordon, Robert John Shea, James M. Sheehan, Harrisburg, Steven I. Roth, Philadelphia, for Department of Transportation.

Lee A. Stivale, Springfield, for Troy Beam.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

The issue presented is whether the Department of Transportation may seek to enjoin the operation of an unlicensed airport where this is not specifically authorized by the controlling statute.

Appellee Troy Beam ("Beam") used a portion of his property in Hopewell Township, Cumberland County, to take off in, land, and house his private airplane. In 1999, the state Department of Transportation (the "Department") filed a complaint in equity and petition for a preliminary injunction, alleging that Beam was operating an airport without a license in violation of Section 471.3 of Title 67 of the Pennsylvania Code, 67 Pa.Code § 471.3, and after refusing the Department's invitation to apply for a license.[1] In response, Beam denied that he maintained or operated an airport and asserted further that the Department lacked the authority to seek an injunction against him.

Following a hearing, the common pleas court denied the request for preliminary injunction and, on Beam's motion, granted summary judgment in his favor and dismissed the Department's complaint. The Department appealed, and the Commonwealth Court affirmed. *See Commonwealth, Dep't of Transp. v. Beam*, 756 A.2d 1179 (Pa.Cmwlth.2000). In their reasoning, the reviewing courts focused on the Department's capacity to seek injunctive relief in a judicial forum. While recognizing that the Department's enumerated powers included the authority to issue airport licenses, *see* 74 Pa.C.S.

---

1. Section 471.3 provides for the licensing of airports and states in pertinent part that "[n]o person may establish, maintain or operate an airport, nor conduct flight operations at an airport, unless authorized to do so by the Bureau [of Aviation, a division of the Department]." 67 Pa.Code § 471.3. Section 471.2 of the same title defines "airport" as:

   [a]n area of land or water which is used, or intended to be used[,] for the landing and takeoff of aircraft and appurtenant areas which are used, or intended to be used, for airport buildings or air navigation facilities or rights-of-way, together with airport buildings and facilities thereon. The term includes heliports and public airports.

   67 Pa.Code § 471.2. This definition is virtually identical to that provided in Section 5102 of the Aviation Code, 74 Pa.C.S. § 5102.

§ 5301(b)(1), and that its regulations establish procedures for license revocation and suspension, *see* 67 Pa.Code § 471.3(g), the courts nevertheless found no statute or regulation conferring authority to commence a civil action.[2] Stressing the precept that an agency charged with the administration of a statute can act only within the strict confines of that statute, and therefore can seek to enforce compliance only with specific legislative authorization, the Commonwealth Court and the common pleas court concluded that the Department bore airport licensing enforcement responsibility but presently lacked the means by which to compel compliance. *See id.* at 1181–82. We allowed appeal to consider this conclusion.[3]

Presently, the Department argues that the reviewing courts construed too narrowly the authority conferred upon it by the Legislature, as they failed to acknowledge that a statutory grant of authority consists not only of that which is expressly granted, but also of authority which is necessarily implied. One such aspect of implied authority, the Department asserts, is the capacity to institute judicial proceedings where necessary to the execution of its statutory responsibilities. The Department also maintains that a violation of the law is tantamount to a public nuisance, which is enjoinable at common law regardless of whether such an injunction is statutorily authorized. Beam contends that, to the contrary, the courts cannot ignore the Legislature's omission of a mechanism for enforcing the prohibition against operation of an unlicensed airport from the Aviation Code. As the General Assembly has elected to provide such mechanisms in other statutes and in

2. Since the Aviation Code directs the Department to promulgate and enforce regulations necessary to execute its mandates, *see* 74 Pa.C.S. § 5301(a), the courts implied that, had it promulgated a regulation enunciating its intention to seek injunctive relief against unlicensed airport operations, this may have been sufficient to preserve the Department's claim in the judicial forum. *See Beam,* 756 A.2d at 1181–82.

3. As the common pleas court's holding embodies purely a legal conclusion, the applicable standard of review focuses upon whether, in granting summary judgment to Beam, the common pleas court committed an error of law, *see Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 590, 777 A.2d 418, 429 (2001), and our scope of review is plenary, *see id.* (citing *Phillips v. A–Best Products Co.,* 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995)).

other provisions of the Aviation Code, Beam argues, it must be presumed that the omission at issue was intentional;[1] thus, it would be an inappropriate expansion of the courts' equitable jurisdiction to seek to remedy that omission. Nor, in Beam's view, is his airport enjoinable as a public nuisance, as it poses no danger to the public.[5]

This Court has long adhered to the precept that the power and authority exercised by administrative agencies must be conferred by legislative language that is clear and unmistakable. *See United Artists' Theater Circuit, Inc. v. City of Phila.*, 535 Pa. 370, 389, 635 A.2d 612, 622 (1993) ("A doubtful power does not exist." (citations omitted)); *Commonwealth, Dep't of Envtl. Resources v. Butler County Mushroom Farm*, 499 Pa. 509, 513, 454 A.2d 1, 3 (1982). At the same time, we recognize that the General Assembly has prescribed that legislative enactments are generally to be construed in such a manner as to effect their objects and promote justice, *see* 1 Pa.C.S. § 1928(c), and, in assessing a statute, courts are directed to consider the consequences of a particular interpretation, as well as other factors enumerated in the Statutory Construction Act. *See Butler County Mushroom Farm*, 499 Pa. at 516–17, 454 A.2d at 5–6 (citing 1 Pa.C.S. § 1921(a))(observing that "[s]tatutory construction is not an exercise to be

**4.** The statutes cited by Beam are 74 Pa.C.S. § 5301(c), discussed *infra;* 74 Pa.C.S. § 5501(b), imposing a fine or thirty days' imprisonment for unauthorized use of a public airport; and 74 Pa.C.S. § 5701(a), (b), making it a summary offense to erect structures within the approach area or in close proximity to an airport without prior approval.

**5.** Beam also argues that we may affirm the Commonwealth Court on grounds that that court did not reach, namely, that his airfield is not an airport which, under the applicable statute and regulations, must be licensed. However, Section 471.5 of the pertinent regulations includes, as a category of airports to be licensed, a private, individual airport, that is, "[a] private airport used exclusively by the licensee." 67 Pa.Code § 471.5(a)(2)(i). Further, while some other jurisdictions exempt certain personal use airports from licensing requirements, *see, e.g.,* Neb.Rev.Stat. § 3–136 (providing licensing exemption for restricted landing areas designed for personal use); *cf.* ORS 830.080 (delegating to a state administrative agency the authority to waive statutory licensing requirements based upon a finding of undue burden and consistency with the public safety), Pennsylvania law contains no statutory analogue.

undertaken without considerations of practicality, precept and experience[,]" as ignoring such considerations may result in a forced and narrow interpretation that does not comport with legislative intent). Based upon such considerations, the rule requiring express legislative delegation is tempered by the recognition that an administrative agency is invested with the implied authority necessary to the effectuation of its express mandates. *See Butler County Mushroom Farm,* 499 Pa. at 513, 454 A.2d at 4; *St. Joe Minerals,* 476 Pa. at 310, 382 A.2d at 736; *Day v. Public Service Comm'n (Yellow Cab Co.),* 312 Pa. 381, 384, 167 A. 565, 566 (1933). *See generally* 2 AM.JUR.2D ADMINISTRATIVE LAW § 62 (1994) (explaining that "[t]he reason for implied powers is that, as a practical matter, the legislature cannot foresee all the problems incidental to carrying out the duties and responsibilities of the agency").[6]

As noted, the Aviation Code contains the core authorization for the Department's regulation of airport operations. Section 5301(a) defines the Department's general aviation-related powers in pertinent part as follows:

(a) **General powers.**—The department shall administer the provisions of this part [Part III (Aviation) of Title 74 (Transportation) ] and, for that purpose, shall promulgate and enforce regulations as necessary to execute the powers vested in it by this part and other laws relating to aviation, airports and air safety within this Commonwealth. The secretary shall have the powers and perform the functions provided by this part.

74 Pa.C.S. § 5301(a). Section 5301(b) grants to the Department certain powers, the first of which is to "[p]rovide for the examination, rating and licensing of airports." 74 Pa.C.S.

---

6. A number of jurisdictions hold that authority given to an agency should be liberally construed in order to permit the agency to carry out its statutory responsibilities, and incidental powers should be readily implied. *See* 2 AM.JUR.2D ADMINISTRATIVE LAW § 58. While we acknowledge that some general principles of statutory interpretation militate in favor of such a view, *see* 1 Pa.C.S. § 1928(c), this Court is not alone in maintaining the more restrained approach, *see, e.g., City of New York v. City Civil Serv. Comm'n,* 60 N.Y.2d 436, 470 N.Y.S.2d 113, 458 N.E.2d 354, 358-59 (1983), and we are not here asked to reconsider this prevailing construct.

§ 5301(b)(1). Section 5301(e) specifies several limitations, including the requirement that any license for an airport shall be effective for a period of not less than two years, with the proviso that the Department may revoke such a license upon proof of any violation of aviation-related laws or regulations. *See* 74 Pa.C.S. § 5301(e)(2).[7] Section 6103(a) authorizes the Department to establish fees for aviation services, including, *inter alia*, the issuance of private airport licenses. *See* 74 Pa.C.S. § 6103(a)(3). As the Commonwealth Court and the common pleas court observed, these provisions, representing the sum total of the General Assembly's directives to the Department regarding the licensing of airports, do not specifically authorize the Department to seek, or preclude it from seeking, injunctive relief against the operation of an unlicensed airport.[8]

Nevertheless, it is evident from the Aviation Code that the Legislature intended to confer upon the Department an ability

7. The other limitations concern the licensing of new airports within a five-mile radius of an existing airport, as well as the conversion of military airports to joint use, *see* 74 Pa.C.S. § 5301(e)(1), and the utilization of the statewide regional apportionment formula, *see* 74 Pa.C.S. § 5302(e)(3).

8. In furtherance of the legislative directives, the Department has promulgated the regulations codified in Chapter 471 of Title 67 of the Pennsylvania Code. Principally, Section 471.3(a), as noted earlier, *see supra* note 1, declares that, with certain exceptions not applicable here, "[n]o person may establish, maintain or operate an airport, nor conduct flight operations at an airport, unless authorized to do so by the Bureau [of Aviation]." 67 Pa.Code § 471.3(a). Section 471.3 provides further that the authorization granted by the Bureau may be suspended or revoked for reasonable cause, such as failure to correct deficiencies or to cease unauthorized activities. *See* 67 Pa.Code § 471.3(g). The regulations also specify fees for on-site inspections and licensing, *see* 67 Pa.Code § 471.4; establish rating categories for airports and heliports, *see* 67 Pa.Code §§ 471.5, 471.6; list requirements applicable to licensed airports and heliports, such as operating the facility safely and notifying the Bureau of hazardous conditions, *see* 67 Pa.Code § 471.7; provide a schedule of penalties, consisting of warnings, suspensions, and revocations, for specified violations, *see* 67 Pa.Code § 471.8; and, finally, provide for appeals from the Bureau's decisions granting, denying, or revoking licenses, *see* 67 Pa.Code § 471.9. Although generally comprehensive, this regulatory scheme, like the statute authorizing its promulgation, does not explicitly confer upon the Department a capacity to seek injunctive relief.

to secure compliance with the statutory requirements.[9] Indeed, such conclusion not only flows from the statutory framework but is bolstered by the character of the enactment, which involves the substantial public safety and welfare implications of aircraft and airport operations. *Cf. City of Columbia v. Board of Health and Envtl. Control,* 292 S.C. 199, 355 S.E.2d 536, 538 (1987)("The delegation of authority to an administrative agency is construed liberally when the agency is concerned with the protection of the health and welfare of the public."); 2 AM.JUR.2D ADMINISTRATIVE LAW § 58 (same). Moreover, as this Court has explained in discussing the allied but distinct concept of agency standing,

> when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters. From this it must follow that, unless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns. In such circumstances the legislature has implicitly ordained that such agency is a proper party litigant, *i.e.,* that it has "standing."

*Commonwealth, Pa. Game Comm'n v. Commonwealth, Dep't of Envtl. Resources,* 521 Pa. 121, 128, 555 A.2d 812, 815 (1989).[10]

---

9. For example, Section 5301(e), authorizing the Department to revoke a license upon proof of statutory or regulatory violation, evidences that intention. Pursuant to statutory direction, the Department has promulgated regulations declaring the operation of an unlicensed airport to be unlawful, *see* 67 Pa.Code § 471.3(a), and specifying the penalties, culminating in revocation of the license, to be imposed for initial and subsequent violations of licensing requirements, *see* 67 Pa.Code § 471.8.

10. This Court's decision in *Commonwealth v. Cunningham,* 365 Pa. 68, 73 A.2d 705 (1950), invoked by the common pleas court, is not to the contrary, as that case concerned the legislature's role in the creation of criminal offenses, *see generally Commonwealth v. Booth,* 564 Pa. 228, 766 A.2d 843 (2001), not the breadth of a legislative grant of enforcement authority to an administrative agency. We would add that this Court's recent decisions in *Salazar v. Allstate Ins. Co.,* 549 Pa. 658, 702 A.2d 1038 (1997)(holding that, although an insurer failed to comply with statutory requirements pertaining to the issuance of uninsured motorist coverage, such failure did not entitle the insured to a remedy

We also observe that pursuit of injunctive relief in a judicial forum represents a restrained and supervised form of administrative action, as compared, for example, to the issuance of some form of direct agency mandate, restraint, or sanction. *Compare Scheble v. Missouri Clean Water Comm'n*, 734 S.W.2d 541, 556 (Mo.App.1987)(determining that a state commission possessed implied authority to issue a mandatory injunction requiring a subdivision developer to utilize a centralized sewer system). Finally, we credit the Department's argument that a continuing violation of the legislatively authorized proscription here involved is injurious to the public interest and is therefore enjoinable by the proper authorities. *Cf. Pennsylvania Soc'y for the Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.*, 428 Pa. 350, 360, 362, 237 A.2d 342, 348, 349 (1968).[11]

because the Legislature had not expressly provided one), and *Donnelly v. Bauer*, 553 Pa. 596, 720 A.2d 447 (1998)(same), also did not pertain to the question of agency enforcement authority. Further, while *St. Joe Minerals* and *United Artists'*, invoked by the Commonwealth Court, both did concern agency authority, neither is controlling. In *St. Joe Minerals* the Court considered whether the capacity to enforce a request for answers to written interrogatories should be read into a specific statutory enumeration of the PHRC's investigatory powers (including the authority to conduct hearings, subpoena witnesses, take testimony, and secure production of documents). *See St. Joe Minerals*, 476 Pa. at 309, 382 A.2d at 735. The Court concluded that it should not, emphasizing that the General Assembly's omission of broad discovery provisions may have been intentional, particularly in light of its focus upon a direct role of the PHRC in the gathering of evidence. *See id.* at 310–11, 382 A.2d at 736. In the present situation, however, the General Assembly's intent to delegate broad enforcement authority to the Department can be gleaned from the Aviation Code, and, relative to such authority, there is no statutory analogue to the PHRA's specific listing of investigatory powers. *United Artists'* held that the Philadelphia Historical Commission lacked legislative authorization to designate the interior of a building as historic, given the enabling ordinance's focus upon building exteriors. *See United Artists'*, 535 Pa. at 386–90, 635 A.2d at 621–22. In the present case, there is no question that licensing of airports is squarely within the realm of the Department's delegated responsibilities.

11. It is noteworthy that the absence of a specific regulation did not deprive Beam of due notice of the Department's intention to proceed against him. By letters sent one and one-half years before, and one month before, the filing of the complaint in equity and petition for injunctive relief, the Department informed Beam that it would pursue this legal remedy if he did not obtain a license for his airport.

We hold, therefore, that the General Assembly has implicitly conferred upon the Department the capacity to seek redress in a judicial forum to restrain operation of an unlicensed airport. *Accord Racine Fire & Police Comm'n v. Stanfield,* 70 Wis.2d 395, 234 N.W.2d 307, 309 (1975)(explaining that a particular power or duty conferred by statute may, of necessity, require the additional power to maintain or defend an action arising out of that power or duty); *City of New York,* 470 N.Y.S.2d 113, 458 N.E.2d at 358–59 (recognizing that the authority of an agency to bring suit does not require "that in every instance there be express legislative authority"; rather, the capacity to sue may also be inferred as a "necessary implication from [the agency's] power and responsibility," provided that "there is no clear legislative intent negating review"); 2 AM.JUR.2D ADMINISTRATIVE LAW § 62 (delineating, among commonly implied agency powers, "the power to sue" and "the power to enforce a regulation").

The order of the Commonwealth Court is reversed and the case is remanded for further proceedings consistent with this opinion.

Former Chief Justice FLAHERTY did not participate in the decision of this case.