# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Our Lady of Victory Catholic Church : 
and Our Lady of Victory Preschool, : 
                   : 
           Petitioners : 
                   : 
           v. :    No. 294 C.D. 2016
                   :    Argued: September 15, 2016
                   : 
Department of Human Services, : 
                   : 
           Respondent : 


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**                       **FILED:  October 31, 2016**

        This matter is a petition for review filed by Our Lady of Victory Catholic Church (Petitioner)[1] appealing a final order of the Department of Human Services (Department) upholding the dismissal of Petitioner's appeal from an order directing it to cease and desist operating an uncertified child care facility. For the reasons set forth below, we affirm the order insofar as it ruled that the Department had authority to issue the cease and desist order, but vacate the dismissal of Petitioner's religious liberty defense to the cease and desist order and remand this matter for a hearing limited to that defense.

---

[1] Although this Court's caption lists both Our Lady of Victory Catholic Church and Our Lady of Victory Preschool as petitioners, the cease and desist order out of which this appeal arises was directed to Our Lady of Victory Catholic Church and the caption in the underlying proceedings and the final order at issue name only Our Lady of Victory Catholic Church as a party. Accordingly, it appears that Our Lady of Victory Catholic Church is the sole petitioner here.

Petitioner, a nonprofit religious organization, owns and operates a preschool, Our Lady of Victory Preschool (Preschool), in State College, Pennsylvania. Department regulations require that any person or entity operating a child day care center that provides care for seven or more children unrelated to the operator must obtain a certificate of compliance before commencing operations. 55 Pa. Code §§ 3270.3(c), 3270.11(a); *see also* 55 Pa. Code § 3270.4. On July 17, 2015, the Department sent Petitioner a letter notifying it that the Department had determined that Petitioner was operating a child day care center providing care to 26 children without a certificate of compliance, in violation of Department regulations, and ordering Petitioner to cease and desist operating Preschool without a certificate of compliance. (Administrative Law Judge (ALJ) Adjudication Findings of Fact (F.F.) ¶2, Reproduced Record (R.R.) at 19a; Cease and Desist Order, R.R. at 13a.)

Petitioner timely appealed the cease and desist order. Petitioner did not dispute that it had not obtained or applied for a certificate of compliance to operate Preschool and did not dispute that Preschool constitutes a child day care center providing care for seven or more children. (ALJ Adjudication at 4, R.R. at 21a; Petitioner's Appeal of Cease and Desist Order, R.R. at 8a-10a.) Rather, Petitioner challenged the cease and desist order on the grounds 1) that the Department lacks authority to issue cease and desist orders to enforce its regulations governing nonprofit child day care centers and 2) that requiring a certificate of compliance for Preschool, which Petitioner contends is part of its religious ministry, violates Petitioner's religious freedom in violation of the First Amendment to the United States Constitution, Article 1, Section 3 of the

2

Pennsylvania Constitution and Pennsylvania's Religious Freedom Protection Act.[2] (Petitioner's Appeal of Cease and Desist Order, R.R. at 8a-10a.) On August 19, 2015, the Department's Bureau of Hearings and Appeals (BHA) issued a rule to show cause why Petitioner's appeal should not be dismissed as legally insufficient and a telephonic, non-evidentiary hearing was held by an ALJ. (ALJ Adjudication F.F. ¶5, R.R. at 19a; Hearing Transcript (H.T.), R.R. at 35a-60a.) At this hearing, Petitioner and the Department fully argued the question of whether the Department has authority to issue a cease and desist order to a nonprofit child day care provider for failure to obtain a certificate of compliance. (H.T. at 9-19, R.R. at 43a-53a.) Counsel for Petitioner, however, asserted that he was unaware from BHA's rule to show cause that Petitioner's religious liberty defense was to be addressed at the telephonic hearing and stated that he was therefore not in a position to argue that issue. (*Id.* at 15, 19-24, R.R. at 49a, 53a-58a.) Counsel for Petitioner requested that a further hearing on the merits be held for argument and introduction of evidence on Petitioner's religious liberty defense. (*Id.* at 22-24, R.R. at 56a-58a.)

Following the telephonic hearing, the ALJ issued a proposed adjudication recommending dismissal of Petitioner's appeal. The ALJ rejected Petitioner's claims that the Department lacked authority to issue a cease and desist order on the ground that the Department's statutory supervisory authority over nonprofit child care facilities and its regulations give the Department implicit power to issue a cease and desist order. (ALJ Adjudication at 5, R.R. at 22a.) The ALJ also stated that if the Department lacked authority to issue cease and desist orders, BHA would lack jurisdiction to hear an appeal of a cease and desist order because the Department's regulations "do not explicitly allow for an appeal of a

---

[2] Act of December 9, 2002, P.L. 1701, 71 P.S. §§ 2401-2407.

3

cease and desist order." (*Id.* at 4-5, R.R. at 21a-22a.) The ALJ rejected Petitioner's religious freedom claims as premature because Petitioner had not applied for a certificate of compliance and also on the ground that Petitioner had not shown that the Department's regulations on their face infringed its religious freedom. (*Id.* at 5-6, R.R. at 22a-23a.) On December 30, 2015, BHA issued an order adopting the ALJ's proposed adjudication. (BHA Order, R.R. at 16a.) Petitioner filed a request for reconsideration by the Secretary of the Department on the questions of whether the Department has authority to issue cease and desist orders and whether BHA has jurisdiction to hear appeals of cease and desist orders. The Secretary granted reconsideration, but upheld the BHA order dismissing Petitioner's appeal "for the reasons stated by the Bureau of Hearings and Appeals." (R.R. at 33a.)

In this appeal,[3] Petitioner argues that the Department lacked authority to issue the cease and desist order and that the dismissal of its appeal without an evidentiary hearing was error. We address each of these issues in turn.

*The Department's Authority to Issue the Cease and Desist Order*

Article IX of the Human Services Code (formerly the Public Welfare Code),[4] governs the Department's authority to regulate nonprofit child day care centers, including those run by religious organizations. Section 902 provides that

---

[3] This Court's review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether the Department's findings of fact are supported by substantial evidence. *KC Equities v. Department of Public Welfare*, 95 A.3d 918, 925 n.5 (Pa. Cmwlth. 2014). The issue of the Department's authority to issue the cease and desist order is a question of law subject to this Court's plenary, *de novo* review. *St. Elizabeth's Child Care Center v. Department of Public Welfare*, 963 A.2d 1274, 1276 (Pa. 2009); *Department of Transportation v. Beam*, 788 A.2d 357, 358-59 & n.3 (Pa. 2002).

[4] Act of June 13, 1967, P.L. 31, art. 9, *as amended*, 62 P.S. §§ 901–922.

the Department "shall have supervision over … [a]ll children's institutions within this Commonwealth," and "children's institutions" are defined as including "any incorporated or unincorporated organization, society, corporation or agency, public or private, which may receive or care for children," other than family child care homes and for-profit child care facilities governed by Article X of the Human Services Code.  62 P.S. §§ 901-902.  Section 911 of the Human Services Code provides:

> (a) The department shall have the power, and its duty shall be:
>
> (1) To make and enforce rules and regulations for a visitation, examination and inspection of all supervised institutions and said visitation, examination or inspection may occur both before and after the beginning of operation of the supervised facility.
>
> (2) To visit and inspect, at least once in each year, all state and supervised institutions; to inquire and examine into their methods of instruction, discipline, detention, care or treatment, … the official conduct of their inspectors, trustees, managers, directors or other officer or officers charged with their management by law or otherwise, or having the management, care, custody or control thereof, the buildings, grounds, premises, and equipment thereof, or connected therewith, and all and every matter and thing relating to their usefulness, administration, and management, and to the welfare of the inmates thereof ….
>
>             *                  *                  *
>
> c) Whenever upon the visitation, examination, and inspection of any State or supervised institution, any condition is found to exist therein which, in the opinion of the department, is unlawful, unhygienic, or detrimental to the proper maintenance and discipline of such State or supervised institution, or to the proper maintenance, custody, safety, and welfare of the inmates thereof, … to direct the officer or

5

officers charged by law with or in any way having or exercising the control, government, or management of such State or supervised institution, to correct the said objectionable condition in the manner and within the time specified by the department, whereupon it shall be the duty of such officer or officers to comply with the direction of the department. If such officer or officers shall fail to comply with such direction, the department may request the Department of Justice [now the Office of Attorney General] to institute appropriate legal proceeding to enforce compliance therewith, or the department may withhold any State money available for such institution until such officer or officers comply with such direction.

62 P.S. § 911(a), (c).

The Department has authority under these provisions to require certificates of compliance for child day care centers run by churches and other nonprofits and the regulations at issue here, 55 Pa. Code § 3270.3(c) and 55 Pa. Code § 3270.11(a), are valid. *St. Elizabeth's Child Care Center v. Department of Public Welfare*, 963 A.2d 1274, 1276-78 (Pa. 2009). Indeed, in *St. Elizabeth's Child Care Center*, our Supreme Court upheld a cease and desist order enforcing the requirement that such day care centers obtain a certificate of compliance.

In *St. Elizabeth's Child Care Center*, the Department, as here, issued a cease and desist order directing a day care center affiliated with a church to cease operations because it did not have a certificate of compliance. 963 A.2d at 1274-75. The day care center appealed the cease and desist order to BHA and appealed BHA's denial of its appeal to this Court, challenging the Department's authority to require a certificate of compliance for nonprofit child day care centers and arguing that the certificate of compliance requirement violated its religious freedom. *Id.* at 1275. This Court, sitting *en banc*, held that the Department lacked authority to require certification of nonprofit child day care centers and did not address the

6

religious freedom issue. *St. Elizabeth's Child Care Center v. Department of Public Welfare*, 895 A.2d 1280, 1281-83 & n.8 (Pa. Cmwlth. 2006), *rev'd*, 963 A.2d 1274 (Pa. 2009). A concurring opinion expressed the view that the Department lacks authority to issue cease and desist orders and that its enforcement powers are limited by Section 911(c) of the Human Services Code to requesting the institution of legal proceedings and withholding state funds. 895 A.2d at 1283-84 & n.2 (Pellegrini, J., concurring).

The Supreme Court granted allowance of appeal on the question of the Department's authority to require certification of nonprofit child day care centers and reversed this Court, holding that Article IX of the Human Services Code grants the Department the power to require nonprofit child day care centers to obtain a certificate of compliance. 963 A.2d at 1276-79. The Supreme Court noted the concurring opinion, but did not suggest that the Department cannot proceed by cease and desist order, and remanded the case to this Court to address only the day care center's religious freedom claim. *Id.* at 1275, 1278-79. On remand, this Court held the day care center's assertions of possible conflict between Department requirements and its religious beliefs were vague and speculative and did not show that requiring a certificate of compliance infringed its religious freedom. *St. Elizabeth's Child Care Center v. Department of Public Welfare*, 989 A.2d 52, 55-57 (Pa. Cmwlth. 2010). This Court, accordingly, affirmed the denial of the day care center's appeal of the cease and desist order. *Id.* at 53, 57.

Petitioner, notwithstanding the decisions in *St. Elizabeth's Child Care Center*, argues that Article IX of the Human Services Code does not grant the Department the power to issue cease and desist orders and that Section 911(c)

7

limits the Department's power to enforce compliance with its regulations to proceedings brought by the Attorney General and the withholding of funds. We do not agree.

Petitioner is correct that there is no express statutory grant of authority to the Department to issue cease and desist orders in Article IX of the Human Services Code. This, however, does not require the conclusion that the cease and desist order is invalid. While an agency's powers must be conferred by the legislature, they may be conferred not only by express statutory authorization, but also by necessary implication. *Department of Transportation v. Beam*, 788 A.2d 357, 359-62 (Pa. 2002); *Department of Environmental Resources v. Butler County Mushroom Farm*, 454 A.2d 1, 4-8 (Pa. 1982).

> [L]egislative enactments are generally to be construed in such a manner as to effect their objects and promote justice, *see* 1 Pa. C.S. § 1928(c), and, in assessing a statute, courts are directed to consider the consequences of a particular interpretation, as well as other factors enumerated in the Statutory Construction Act. … Based upon such considerations, the rule requiring express legislative delegation is tempered by the recognition that an administrative agency is invested with the implied authority necessary to the effectuation of its express mandates.

*Beam*, 788 A.2d at 359-60.

An agency thus has authority to issue administrative orders and utilize other enforcement methods, even though such orders or methods are not expressly authorized by statute, where the powers granted to the agency by statute implicitly confer that enforcement power. *Beam*, 788 A.2d at 360-62 (agency had power to seek injunction against unlicensed airport where statute provided that agency "shall promulgate and enforce regulations as necessary to execute the powers vested in it … relating to aviation, airports and air safety within this Commonwealth" and

8

granted agency the power to license airports); *Butler County Mushroom Farm*, 454 A.2d at 4-8 (agency had authority to issue order requiring specific safety procedure where employment safety statute provided that agency "shall have the power … to issue the necessary instructions … to correct violations of this act or regulations based on this act"); *Appeal of Culp*, 522 A.2d 1176, 1178-79 (Pa. Cmwlth. 1987) (agency had authority to issue cease and desist order concerning health hazard where statute provided that agency "shall prevent or remove conditions which constitute a menace to public health" and "shall make and enforce such rules and regulations ... as may be necessary for the promotion and preservation of the public health"); *American Wine Foundation v. Department of Education*, (Pa. Cmwlth., No. 1066 C.D. 2008, filed April 7, 2009), slip op. at 9-11, 2009 WL 9096517 at *5-*6 (board had authority to issue cease and desist order concerning school licensure, although statute was "silent as to [its] authority to issue a cease and desist order," where statute provided that board had "the power to take appropriate necessary action for the enforcement of its policies, rules and regulations").[5] *But see Aetna Casualty & Surety Co. v. Insurance Department*, 638 A.2d 194, 200-01 (Pa. 1994) (statutory provision for examination of and reporting on insurer practices was not sufficient to authorize agency to issue cease and desist order against practices of insurers that are not prohibited by law).

Here, Section 911(c) of the Human Services Code expressly grants the Department authority, "[w]henever upon the visitation, examination, and inspection of any … supervised institution, <u>any condition is found to exist therein which, in the opinion of the department, is unlawful</u>, unhygienic, <u>or detrimental</u> to the proper maintenance and discipline of such … supervised institution, or to the

---

[5] Because it is an unreported decision, *American Wine Foundation* is not binding precedent, but is considered by the Court for its persuasive value. 210 Pa. Code § 69.414(a).

proper maintenance, custody, safety, and welfare of the inmates thereof, … <u>to direct the officer or officers</u> … <u>of such … supervised institution, to correct the said objectionable condition in the manner and within the time specified by the department, whereupon it shall be the duty of such officer or officers to comply with the direction of the department</u>." 62 P.S. § 911(c) (emphasis added). This statutory authorization to "direct" the persons in charge of a child care center "to correct" conditions that are "unlawful, unhygienic, or detrimental to the proper maintenance" of such facility "in the manner and within the time specified by the department" and imposition on the child care provider of a "duty … to comply with the direction of the department" implicitly includes authority to issue cease and desist orders to enforce compliance with the Department's regulations, as such cease and desist orders are directions to correct an unlawful condition. *Compare Butler County Mushroom Farm*, 454 A.2d at 4-6 (statutory grant of power to "issue … instructions …to correct violations" conferred authority on agency to issue administrative orders requiring safety procedures). Contrary to Petitioner's assertions, the cease and desist order here did identify the objectionable condition, operation of a child day care center without a certificate of compliance, and directed correction of that condition, as it directed Petitioner to cease operating Preschool without a certificate of compliance.

Section 911(c) also provides that if the child care provider "shall fail to comply with such direction, the department may request [the Office of Attorney General] to institute appropriate legal proceeding to enforce compliance therewith, or the department may withhold any State money available for such institution." 62 P.S. § 911(c). Petitioner argues that this language requires that the Department proceed only by requesting enforcement by the Attorney General or withholding

funds and prohibits cease and desist orders. Even if this language provides an exclusive procedure, however, it applies to enforcement of a direction issued by the Department after the child care provider has failed to comply, not to the Department's authority to issue the direction. Because a cease and desist order is a direction by the Department under the first sentence of Section 911(c), the enforcement provision in the second sentence would apply only in determining what the Department may do to compel compliance with the cease and desist order if Petitioner disobeys it, not to its power to issue the cease and desist order.

None of the cases cited by Petitioner support its contention that the Department lacks authority to enforce its certificate of compliance regulations by cease and desist orders. Only three of the cases relied on by Petitioner held that the agency action was invalid or that the agency lacked authority, and those decisions did not involve enforcement powers. In *Peake v. Commonwealth*, 132 A.3d 506 (Pa. Cmwlth. 2015), the invalid agency action was a modification of a substantive prohibition imposed by statute and was invalid because it conflicted with the statute's prohibition. *Id.* at 511-14, 522-23 (agency policy permitted exceptions and case-by-case employment decisions where statute imposed a blanket employment prohibition). In *Northwestern Youth Services, Inc. v. Department of Public Welfare*, 66 A.3d 301 (Pa. 2013), the agency action was invalid because it was a regulation not promulgated in accordance with the statutory requirements for regulations. In *V.S. v. Department of Public Welfare*, 131 A.3d 523 (Pa. Cmwlth. 2015), the issue was whether there is a requirement to appoint counsel or a guardian ad litem for a parent in a child abuse expungement hearing and no agency action was invalidated. Rather, the statement that the agency lacked authority was

11

a ground for holding that the agency's failure to appoint counsel or a guardian ad litem did not violate the parent's rights. *Id.* at 529-30.

Petitioner also asserts that the Department's cease and desist order is invalid because it does not comply with the requirements of the act commonly referred to as the Commonwealth Documents Law,[6] the Regulatory Review Act,[7] and the Commonwealth Attorneys Act.[8] This argument is without merit. Compliance with the Commonwealth Documents Law, Regulatory Review Act, and Commonwealth Attorneys Act is required only where an agency promulgates a regulation. *Naylor v. Department of Public Welfare*, 54 A.3d 429, 433-34, 436 (Pa. Cmwlth. 2012), *aff'd without op.*, 76 A.3d 536 (Pa. 2013); *Borough of Bedford v. Department of Environmental Protection*, 972 A.2d 53, 61-63 (Pa. Cmwlth. 2009) (*en banc*). Agency action constitutes a regulation where it is denominated by the agency as a regulation or, even if not so labeled, where it purports to establish a "binding norm." *Northwestern Youth Services, Inc. v. Department of Public Welfare*, 1 A.3d 988, 993 (Pa. Cmwlth. 2010), *aff'd*, 66 A.3d 301 (Pa. 2013); *Cash America Net of Nevada, LLC v. Commonwealth*, 978 A.2d 1028, 1033-34 (Pa. Cmwlth. 2009) (*en banc*), *aff'd*, 8 A.3d 282, 297 (Pa. 2010); *Borough of Bedford*, 972 A.2d at 63. The Department did not issue the cease and desist order as a regulation and the cease and desist order here was a direction to Petitioner to comply with an existing regulation, not a binding norm establishing new standards for child day care providers. The binding norm here is the requirement of a certificate of compliance, which the Department validly

---

[6] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102-1602; 45 Pa. C.S. §§ 501-907.

[7] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1-745.14.

[8] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§ 732-101 - 732-506.

promulgated in regulations, 55 Pa. Code § 3270.3(c) and 55 Pa. Code § 3270.11(a), not the Department's choice of a procedure for enforcing that binding norm against an entity that violated those regulations. *See Department of Environmental Protection v. Cumberland Coal Resources, LP*, 102 A.3d 962, 977-78 (Pa. 2014) (administrative order enforcing existing requirement does not constitute regulation and need not comply with requirements for promulgation of regulations).

Petitioner's remaining claim, that the cease and desist order violates a Department regulation governing correction of noncompliance with child day care center regulations, likewise fails. That regulation, 55 Pa. Code § 20.52, provides that "[i]f, during an inspection, authorized agents of the Department observe items of noncompliance with licensure or approval regulations, the legal entity shall submit an acceptable written plan to correct each noncompliance item and shall establish an acceptable period of time to correct these items." *Id.* (emphasis added). Petitioner contends that the cease and desist order violates this regulation because it did not give Petitioner a period of time to correct the violation. The regulation, however, does not govern Department orders and directions; rather, it governs an obligation of the child care provider, and imposes a requirement that the child care provider ("the legal entity") propose a written plan of compliance. The regulation is therefore inapplicable to the cease and desist order. In any event, the absence of a period of time for compliance would be harmless here, as there was no contention by Petitioner in the BHA proceedings that it sought to cure the violation by applying for a certificate of compliance after it received the cease and desist order.

In light of the Supreme Court's ruling in *St. Elizabeth's Child Care Center* and language in Section 911(c) of the Human Services Code, we hold that

DHS has the authority to issue a cease and desist order to a child day care center that meets the threshold requirements for regulation by DHS, but is operating without a certificate of compliance.

*The Dismissal Without an Evidentiary Hearing*

Petitioner argues that BHA erred in holding that it lacked authority to hear Petitioner's appeal and that the dismissal of the appeal without an evidentiary hearing violated its right to due process.

We agree that BHA had jurisdiction to hear the appeal from the cease and desist order. The Department's child day care regulations expressly provide that "[a]n operator may appeal a Departmental decision relating to the status of a certificate of compliance of a facility owned or operated by the legal entity" and list as appealable actions decisions "limiting or precluding admission of persons into the facility." 55 Pa. Code § 3270.12(c), (d)(8). The cease and desist order was a Department "decision relating to the status of a certificate of compliance" and a decision "precluding admission of persons into [Petitioner's] facility" and was therefore appealable.

Petitioner's appeal, however, was not dismissed for lack of jurisdiction. Rather, the ALJ's decision, adopted by BHA and the Secretary, addressed the merits of Petitioner's claims of lack of Department authority to issue cease and desist orders and infringement of its religious rights and held that those grounds for appeal were legally insufficient. (ALJ Adjudication at 5-6, R.R. at 22a-23a.) The ALJ's erroneous statements that the Department's regulations do not "allow for an appeal of a cease and desist order" and that "if the Department lacks authority to issue a cease and desist order, then the BHA also lacks authority

14

to hear Appellant's appeal on that issue" (*id.* at 5, R.R. at 22a) are thus harmless *dicta* and do not invalidate the decision.

The issue of whether an evidentiary hearing was required is more complicated. A party does not have a right to an evidentiary hearing where the only disputes are legal issues and the facts on which the agency decision is based are undisputed. *Sal's Restaurant, Inc. v. Department of Health, Bureau of Health Promotion and Risk Reduction*, 67 A.3d 57, 61 (Pa. Cmwlth. 2013); *Gruff v. Department of State*, 913 A.2d 1008, 1014 (Pa. Cmwlth. 2006); *Independence Blue Cross v. Pennsylvania Insurance Department*, 802 A.2d 715, 720 (Pa. Cmwlth. 2002). The only factual questions on which the cease and desist order depended were whether Petitioner had a certificate of compliance and whether Preschool was providing care for seven or more children, and those facts were not contested by Petitioner. Whether the Department had authority to proceed by cease and desist order is a question of law, not a factual issue. *Beam*, 788 A.2d at 358-59 & n.3. Petitioner was therefore not entitled to an evidentiary hearing on its defense that the Department lacks power to enforce its certificate of compliance regulation by cease and desist order.

In contrast, it does not appear that the facts concerning Petitioner's religious liberty defense were undisputed. The record is not clear that all of Petitioner's religious liberty arguments were identical to those held legally insufficient in *St. Elizabeth's Child Care Center*. Petitioner requested an evidentiary hearing on the merits of its religious liberty defense and contended that it wished to introduce evidence as to how the certificate of compliance requirement has affected other religious day care providers. (H.T. at 22-23, R.R. at 56a-57a.) Because the facts were not shown to be undisputed, Petitioner was entitled to an

15

opportunity to introduce evidence to show a burden on its exercise of its religious freedoms in support of its religious liberty defense and the dismissal of that defense without an evidentiary hearing was error.[9]

For the reasons set forth above, we affirm the order of the Department insofar as it held that the Department had authority to issue the cease and desist order, but vacate its dismissal of Petitioner's religious liberty defense, and remand this matter for a hearing limited to that defense.

_____
**JAMES GARDNER COLINS, Senior Judge**

---

[9] Petitioner has also argued that it intended to seek discovery if its appeal proceeded to the merits. We note that Petitioner does not have an automatic due process right to discovery in an administrative proceeding such as this. *KC Equities*, 95 A.3d at 932-33.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Our Lady of Victory Catholic Church : 
and Our Lady of Victory Preschool, : 
                          : 
            Petitioners : 
                          : 
            v. : No. 294 C.D. 2016
                          : 
Department of Human Services, : 
                          : 
            Respondent : 

## O R D E R

AND NOW, this 31st day of October, 2016, the order of the Department of Human Services (Department) in the above-captioned matter is AFFIRMED insofar as it upheld the Department's authority to issue the cease and desist order, but is VACATED insofar as it ruled on Petitioner's religious liberty defense to the cease and desist order. This case is remanded to the Bureau of Hearings and Appeals of the Department of Human Services for an evidentiary hearing limited to Petitioner's religious liberty defense.

Jurisdiction relinquished.

_____
**JAMES GARDNER COLINS, Senior Judge**