**[J-34-2021][M.O. – Todd, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT**

| | | |
|---|---|---|
| J.S., A MINOR BY HIS PARENTS, M.S. AND D.S., | : | No. 2 MAP 2021 |
| | : | |
| | : | Appeal from the Order of the |
| Appellees | : | Commonwealth Court dated 5/13/20 at |
| | : | No. 341 CD 2019 affirming the order of |
| | : | the Lancaster County Court of |
| v. | : | Common Pleas, Civil Division, dated |
| | : | 2/25/19 at No. CI-18-04246 |
| | : | |
| MANHEIM TOWNSHIP SCHOOL DISTRICT, | : | |
| | : | |
| | : | |
| Appellant | : | ARGUED:  May 18, 2021 |

**CONCURRING OPINION**

**JUSTICE SAYLOR**                                           **DECIDED:  November 17, 2021**

I agree with the outcome of an affirmance, but I would apply a substantially different rationale.

First, I support Justice Dougherty's position that the Court should address the first issue on which this appeal was allowed.  School boards must have the power to issue subpoenas, or to petition courts of common pleas to issue them, either under the conferral of such authority reposited in the Teachers' Tenure Act, *see* 24 P.S. §11-1128, as the Pennsylvania School Board Association argues, or as an essential corollary to school boards' authority, under Section 1318 of the Public School Code, to impose forms of discipline that require the affordance of due process.  *See* 24 P.S. §13-1318; *see also* 22 Pa. Code §12.8(b); *cf. Commonwealth v. Beam*, 567 Pa. 492, 495-96, 788 A.2d 357, 359-

60 (2002) (elaborating on the implied powers of administrative agencies necessary to the performance of their essential functions).

Second, I would credit Appellee's position that the Board's written adjudication is legally inadequate and lacking in sufficient evidentiary support. According to Appellee, the Board embarked on its own case-specific policymaking venture -- expelling Appellee because it found his off-campus conduct to be distasteful, disruptive, and unacceptable -- rather than analyzing and adhering to the actual terms of the written policies that he was accused of violating. *See, e.g.*, Brief for Appellee at 15. In my judgment, the record provides substantial support for this position.

The Board's apparent lack of concern for the relevant policy terms is most manifest relative to the charge of cyberbullying. As the county court explained, this policy, by its explicit terms, applies only to the actions of students occurring in a "school setting." Policy Manual, Manheim Twp. Sch. Bd. §249 (last revised Feb. 21, 2019). And, per the policy, "school setting" is defined as "in the school, on school grounds, in school vehicles, at a designated bus stop or at any activity sponsored, supervised or sanctioned by the school." *Id.* Since Appellee indisputably was not in a school setting when he sent memes privately to Student 1 from his home, the Board's finding that Appellee's conduct constituted cyberbullying under its policy is clearly, if not blatantly, erroneous.[1]

The analysis relative to the charge of violating the school's policy against terroristic threats is somewhat more complicated. Unlike the prohibition against cyberbullying, this policy doesn't straightforwardly specify that it applies only to on-campus conduct, but the policy does contain some indicia that such a limitation was intended. *See id.* §218.2

---

[1] Notably, in 2008, the Legislature authorized schools to adopt bullying policies that encompass certain acts occurring outside the school setting. *See* 24 P.S. §13-1303.1-A. While the Board's present policy has been amended to extend its reach, the policy in effect at the time the conduct in issue here occurred remained tethered to the school setting.

(authorizing school superintendents to report to police incidents involving terroristic threats "on school property, at any school-sponsored or on a conveyance providing transportation to or from a school or school-sponsored activity" and requiring superintendents to notify parents of suspects and victims regardless of whether the police department having jurisdiction over "the school property" has been notified).[2] Moreover, the policy was implemented under Section 510 of the Public School Code, *see* Policy Manual, Manheim Twp. Sch. Bd. §000 & n.2, which tethers school boards' power to make rules and regulations governing students' conduct to the time during which "they are under the supervision of the board of school directors and teachers, including the time necessarily spent in coming to and returning to school." 24 P.S. §5-510. Given the relevant allusions in Section 218.2 -- and particularly on account of the limitations contained in the statutory enabling authority invoked by the Board itself -- it seems evident that the policy must be construed to apply only to threats occurring on school property or while an offending student is under school supervision.

Significantly, in light of the boundaries on school boards' authority to regulate the conduct of students established by the Legislature in Section 510, by design it simply had not tested the limits of the constitutional restrictions on the regulation of off-campus speech under the *Tinker* line of cases. Accordingly, I agree with Appellee that the School

---

[2] The explicit school-property nexus related to reporting and parental notification suggests that the Board contemplated that the reach of its policy extended only to on-campus conduct. This is so particularly since there would be no apparent reason that the Board would undertake to authorize reporting and require notification relative to on-campus, but not-off campus, violations, if the latter were within its contemplation when it established the policy.

District's continuing efforts to inject this line of constitutional analysis into this case is both misguided and confounding.[3]

Similarly, the constitutional free-speech concerns addressed in *Commonwealth v. Knox*, 647 Pa. 593, 190 A.3d 1146 (2018), are also not directly relevant here. In this regard, to the degree that Section 218.2 could be construed as applying to off-campus speech, the policy by its own terms requires a subjective intent to terrorize to support discipline. *See* Policy Manual, Manheim Twp. Sch. Bd. §218.2 (defining "terroristic threat," in relevant part, as a threat made "with the intent to terrorize another," with the intent to "cause serious public inconvenience," or with "reckless disregard of the risk of causing such terror or [public] inconvenience"). The policy itself, therefore, affords the highest degree of tolerance that may be required under constitutional norms protecting speech (consistent with the criminal-law decisions such as *Knox*).[4] As such, it doesn't implicate the disputes as to whether a lesser (or objective) standard should apply relative to regulation by school officials of students' off-campus conduct.

Since I find the constitutional arguments to be largely superfluous, what would remain, in my judgment (assuming the Board's policies could apply to support regulation of off-campus speech, despite their derivation from a statute specifying to the contrary) is a review of the adequacy of the Board's findings and the substantiality of the evidence

---

[3] This does not mean that school districts are powerless to respond to off-campus conduct that raises safety and security concerns. They are certainly free to engage the police, as occurred here, and to take whatever internal safety and security measures they deem reasonably necessary. What they should not be free to do, under the prevailing legislative scheme invoked by the Board in establishing its policies for the relevant time period, is to impose *post hoc* discipline on the order of lengthy suspensions or expulsions for off-campus conduct.

[4] As a caveat, the issue of whether recklessness can suffice to support speech regulation, at least in a criminal or quasi-criminal context, is presently before this Court in *In re J.J.M.*, 23 MAP 2020. Here, however, Appellee acknowledges that this has not been made an issue in the present case. *See* Brief for Appellee at 50 n.28.

relied upon by the Board. In this respect, I return to the theme that the Board's findings -- here to the effect that Appellee made terroristic threats -- afford insufficient attention to the terms of the policies in issue. In this regard, the Board refrained from analyzing each element of the policy's definition of terroristic threats in relation to Appellee's circumstances, but instead, it proceeded in a cryptic and conclusory fashion to merely pronounce that such threats had been made. *See, e.g.*, Adjudication of the Manheim Twp. Sch. Bd. dated May 10, 2018, at 6. Most significantly, the Board's analysis affords no attention *at all* to the element of specific intent that is manifest in the policy definition.[5]

Finally, I tend toward the majority's assessment that the evidence of a specific intent to terrorize, or recklessness pertaining to terrorization, is also lacking (albeit not wholly on account of the discrete rationale set forth in the majority opinion). It seems to me, however, that the Board's failure to issue a reasoned adjudication fairly addressing the essential elements of a terroristic threat as set forth in the policy he was accused of violating should be deemed disabling in the first instance.

Justice Mundy joins this concurring opinion.

---

[5] Notably, in its factual findings, the Board had specifically apprehended that Appellant's memes portrayed *another student* as threatening a school shooting. *See* Adjudication of the Manheim Twp. Sch. Bd. dated May 10, 2018, at FOF ¶9. Nevertheless, this critical factor is missing entirely from the Board's analysis of the disciplinary charges. *See id.* at 6-7.