# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nathaniel Fick, :
            Petitioner :
             :
           v. :
             :
Lieutenant Colonel George Bivens, :
Acting Commissioner, Pennsylvania :
State Police,[1] : No. 51 M.D. 2022
           Respondent : Argued: April 13, 2026


BEFORE:   HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STELLA M. TSAI, Judge

OPINION BY
JUDGE COVEY                     FILED: May 28, 2026


      Before this Court is Nathaniel Fick's (Fick) Application for Summary and Special Relief Pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1532(b), Pa.R.A.P. 1532(b) (Application), wherein he asks this Court to declare: (1) simple assault is not a crime of violence or a disqualifying criminal offense under Section 21.1 of the Pennsylvania State Police's (PSP) Regulations;[2] (2) PSP Commissioner Colonel Robert Evanchick's (Commissioner/PSP) interpretation that simple assault is a crime of violence or a disqualifying criminal offense (Interpretation) is contrary to PSP's Regulations and/or violates Section 202 of the

---

[1] Colonel Robert Evanchick (Colonel Evanchick) was the Pennsylvania State Police's (PSP) Commissioner when Nathaniel Fick (Fick) initiated this litigation in February 2022. When Fick filed the Application for Summary and Special Relief Pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1532(b), Pa.R.A.P. 1532(b), in October 2025, Colonel Christopher Paris (Colonel Paris) was PSP Commissioner. When Colonel Paris retired in January 2026, Lieutenant Colonel George Bivens (Lt. Colonel Bivens) became PSP Acting Commissioner. Lt. Colonel Bivens is substituted for Colonel Evanchick pursuant to Rule 502(c), Pa.R.A.P. 502(c).

[2] 37 Pa. Code § 21.1.

Commonwealth Documents Law (CDL);[3] and (3) the Lethal Weapons Training Act (Act 235),[4] PSP's Regulations, and PSP's Interpretation violate the Pennsylvania and United States (U.S.) Constitutions.  Fick also seeks to have this Court permanently enjoin PSP from applying and/or enforcing its Interpretation.

## Background

The facts are not disputed.  Fick has been employed as a security guard since 2012, but was not required or permitted to carry a lethal weapon.  *See* February 9, 2022 Declaration of Nathaniel Fick (Fick 2022 Declaration) ¶ 2.  On or about May 2021, ESS Security Services (ESS) offered Fick a full-time security position that required him to carry a firearm and, thus, necessitated that he obtain a certification pursuant to Act 235.  *See* Fick 2022 Decl. ¶ 3.  Fick also interviewed for an executive protection position that paid "extremely well," and required Act 235 certification.  Fick 2022 Decl. ¶ 4.  On June 28, 2021, Fick electronically submitted his Act 235 certification application to PSP.  *See* Fick 2022 Decl. ¶ 5.  As part of the application, Fick had to verify - subject to criminal penalties and/or permanent disqualification - that he was eligible for Act 235 certification and the information he supplied in his application, including any arrests or criminal charges against him, was true and correct.  *See*  Fick 2022 Decl. ¶ 6; *see also* Appl. Ex. A.

By January 14, 2022 letter, PSP denied Fick's application "due to [his] May 29, 2014 conviction for the following offense: Simple Assault[,]" which is a second degree misdemeanor under Section 2701 of the Crimes Code.[5]  Fick 2022

---

[3] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. § 1202.
[4] Act of October 10, 1974, P.L. 705, *as amended*, 22 P.S. §§ 41-50.1.
[5] Section 2701 of the Crimes Code defines *simple assault* as follows:

Decl. ¶ 7; *see also* Appl. Ex. B. PSP also notified Fick that he could request an administrative hearing regarding the denial. *See id.* By correspondence to PSP dated January 24, 2022, Fick, pro se, requested a hearing. *See* Fick 2022 Decl. ¶ 8; *see also* Appl. Ex. C. On January 28, 2022, the Firearms Industry Consulting Group submitted an amended hearing request to PSP on Fick's behalf, therein asserting the specific legal grounds for Fick's challenge and requesting that PSP reverse its January 14, 2022 denial. *See* Fick 2022 Decl. ¶ 9; *see also* Appl. Ex. D. That same day, PSP responded: "[T]his will have to be resolved through a hearing. PSP's position is that simple assault is a crime of violence and therefore the denial should be upheld." Fick 2022 Decl. ¶ 10; *see also* Appl. Ex. E.

On February 9, 2022, Fick filed a Petition for Review (PFR) in this Court's original jurisdiction, along with an Application for Special Relief in the Form of an Emergency/Expedited Preliminary Injunction under Rule 1532 (Expedited PI Application). On February 28, 2022, Fick filed an Amended Petition for Review (Amended PFR) and the Fick 2022 Declaration. On March 9, 2022, PSP

---

> Except as provided under [S]ection 2702 [of the Crimes Code, 18 Pa.C.S. § 2702] (relating to aggravated assault), a person is guilty of assault if he:
>
> (1) attempts to cause or intentionally, knowingly[,] or recklessly causes bodily injury to another;
>
> (2) negligently causes bodily injury to another with a deadly weapon;
>
> (3) attempts by physical menace to put another in fear of imminent serious bodily injury; or
>
> (4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility[,] or mental hospital during the course of an arrest or any search of the person.

18 Pa.C.S. § 2701. Section 2301 of the Crimes Code defines *bodily injury* as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

3

filed an answer to the Expedited PI Application, asserting that Fick had failed to exhaust his administrative remedies; namely, PSP's as yet unscheduled hearing, which PSP represented it would schedule for May 2022. PSP's answer further reflected: "[T]here has not been any criminal referral regarding [Fick's Act 235] application and the answers placed thereon, nor will [PSP] be referring [Fick] for criminal investigation to an outside agency, or initiating an internal criminal investigation, and emergency injunctive relief is not necessary." Expedited PI Appl. ¶ 33.

On March 14, 2022, PSP scheduled Fick's hearing for May 3, 2022. On April 7, 2022, Fick filed a request for a preliminary injunction hearing. On April 11, 2022, PSP filed an Application to Stay Proceedings Due to Exhaustion of Administrative Remedies Doctrine (Stay Application), which Fick opposed that same day. By April 18, 2022 Order, this Court scheduled argument on the Stay Application for April 27, 2022, with a hearing on the Expedited PI Application scheduled to follow immediately thereafter.[6]

At the April 27, 2022 argument on the Stay Application, PSP claimed that it did not have an active policy of automatically equating simple assault to a crime of violence, and admitted that its denials on that basis were only justifiable under the *any other crime language* portion of the definition of *disqualifying criminal offense* in Section 21.1(ii) of PSP's Regulations. *See* PSP Br. at 15; *see also Fick v. Evanchick, Comm'r Pa. State Police* (Pa. Cmwlth. No. 51 M.D. 2022, filed May 3, 2022) (*Fick I*), slip op. at 13 n.7. PSP also informed the *Fick I* Court that within the year leading up to argument, it issued up to 10 Act 235 denials and/or revocations based on simple assault convictions. *See Fick I*, slip op. at 10.

---

[6] By April 20, 2022 Order, this Court stayed this matter pending PSP's May 3, 2022 hearing. That same day, Fick filed an Application for Reconsideration/Reargument of this Court's April 20, 2022 Order, which this Court granted on April 21, 2022, thereby reinstating the April 18, 2022 Order scheduling the April 27, 2022 hearing.

On May 3, 2022, this Court denied PSP's Stay Application, and granted the Expedited PI Application in part, enjoining PSP from: (1) applying the definition of *crime of violence* in Section 21.1 of PSP's Regulations to include simple assault or an attempt, solicitation, or conspiracy with respect to simple assault; (2) applying the definition of *disqualifying criminal offense* in Section 21.2(ii) of PSP's Regulations to include a conviction for simple assault or an attempt, solicitation, or conspiracy with respect to simple assault; and (3) applying the terms *crime of violence* and *disqualifying criminal offense* under any part of Title 37, Chapter 21 of PSP's Regulations.[7] On August 16, 2022, PSP filed an Answer and New Matter to the Amended PFR.[8] PSP represented in the New Matter that Fick had obtained his Act 235 certification on June 27, 2022.

On October 21, 2025,[9] Fick filed the Application, together with an October 16, 2025 Declaration of Nathaniel Fick (Fick 2025 Declaration). In the Application, Fick seeks summary and special relief in the form of declarative and permanent injunctive relief precluding PSP from: (1) implementing or enforcing any practice, policy, regulation, rule, or interpretation construing *simple assault* as a *crime of violence* or *disqualifying criminal offense* in direct contradiction of Section 21.1 of PSP's Regulations; and (2) implementing or enforcing Act 235 and any

---

[7] The *Fick I* Court also made the injunction effective upon Fick's filing of security in the amount of $50.00, which Fick lodged on May 9, 2022. At oral argument before this Court, PSP's counsel agreed with Fick's counsel that this Court should return Fick's security.

[8] On March 30, 2022, PSP filed preliminary objections to the Amended PFR. Fick filed an answer to the preliminary objections on April 1, 2022. By May 10, 2022 Order, this Court directed the parties to file briefs. On June 9, 2022, PSP filed a praecipe to withdraw the preliminary objections. On June 16, 2022, this Court granted the withdrawal and ordered PSP to file an answer to the Amended PFR. Because PSP's Answer and New Matter did not contain a notice to plead, Fick was not required to respond to the New Matter. *See* Pennsylvania Rule of Civil Procedure 1026(a), Pa.R.Civ.P. 1026(a). Therefore, the pleadings were closed upon PSP's filing of the Answer and New Matter.

[9] Because no docket activity occurred in the meantime, on September 25, 2025, this Court issued a Rule to Show Cause why the action should not be terminated for want of prosecution.

practice, policy, regulation, rule, or interpretation related thereto. *See* Appl. at 18-21 (*Ad Damnum* Clause).

PSP filed its answer opposing the Application on November 4, 2025 (Answer). PSP's opposing brief, filed on December 17, 2025, included an unsworn declaration by Christopher Clark (Clark), Director of Administration and Certification at PSP's Municipal Police Officers' Education and Training Commission. In the Answer, consistent with PSP's representations in its answer to the Expedited PI Application, Clark attested that Fick had applied and successfully obtained his Act 235 certification, that his renewal was due June 26, 2027, and that "Fick will be granted renewal and will not be denied any future renewal because of the simple assault conviction under the current law and regulatory scheme." Clark Decl. ¶ 16; *see also* PSP Br. at 13 ("[PSP] has retracted the position that [Fick] is not eligible for certification on the basis of his May 29, 2014 conviction for simple assault."). Correspondingly, PSP asserted in its Answer that since PSP will not deny Fick's renewals based on his simple assault conviction, there is no longer an actual controversy and, thus, this action is now moot.

On November 17, 2025, this Court directed the parties to file their respective briefs, which they did. The parties presented oral argument to this Court on April 13, 2026. The Application is now ripe for disposition.

## Discussion

### 1. Mootness

Preliminarily, this Court has explained:

> "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Commonwealth v. Nava*, 966 A.2d 630, 632-33 (Pa. Super. 2009). Stated differently, "[a]n issue before a court is moot if in ruling

6

upon the issue the court cannot enter an order that has any legal force or effect." *Id*. at 633. Cases presenting mootness problems are those that involve litigants who clearly had standing to sue at the outset of the litigation. "The problems arise from events occurring after the lawsuit has gotten underway - changes in the facts or in the law - which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *In re Gross*, . . . 382 A.2d 116 ([Pa.] 1978) (quoting G. Gunther, *Constitutional Law* 1578 (9th Ed. 1975)).

This Court will not decide moot questions.

*Chruby v. Dep't of Corr.*, 4 A.3d 764, 770-71 (Pa. Cmwlth. 2010). However, "[e]xceptions to th[e mootness] principle are made where (1) the conduct complained of is capable of repetition yet likely to evade review, (2) the case involves issues important to the public interest, or (3) a party will suffer some detriment without the court's decision." *Id*. at 771.

In the Fick 2025 Declaration, Fick confirmed that the *Fick I* preliminary injunction afforded him the opportunity to obtain his Act 235 certification on June 27, 2022, that it expires on June 26, 2027, and that, without it, he would no longer be eligible for his current security job. *See* Fick 2025 Decl. ¶¶ 13-16. Fick adds:

> [A]lthough [*Fick I*] afforded [] Fick the ability to obtain his Act 235 certification, he fears that if this Court does not enter final declaratory and permanent injunctive relief, nothing would prevent the enforcement of PSP's [Interpretation] against him in the future, including, *inter alia*, the revocation of his current Act 235 certification or denial of his renewal application, as well as[][] PSP contending that he has a "permanent disqualification" from being Act 235 certified and the possibility of his arrest and prosecution based on [] PSP's positions.

Fick Br. at 3.

7

PSP responds that "a renewal will not be denied on the basis of [Fick's] simple assault conviction." PSP Ans. to Appl. ¶¶ 36-51; *see also* Clark Decl. ¶ 16. However, PSP did not expressly retract its Interpretation as to *all* Act 235 certification applicants. Moreover, in his PFR and Amended PFR, Fick seeks: (1) a declaration "under the Declaratory Judgments Act [(DJA)],[10] 42 Pa.C.S. §§ 7531-7541, on behalf of himself *and those similarly situated*"[11] that PSP improperly interprets that simple assault is a crime of violence or a disqualifying criminal

[10] This Court has explained:

> The DJA's purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" and, accordingly, must "be liberally construed and administered." [Section 7541(a) of the DJA,] 42 Pa.C.S. § 7541(a). To that end, Section 7533 of the DJA specifies: "Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa.C.S. § 7533. Thus, Section 7532 of the DJA affords courts the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed[ ] . . . , and such declarations shall have the force and effect of a final judgment or decree." 42 Pa.C.S. § 7532. Moreover, the Pennsylvania Supreme Court has ruled that "a facial challenge to the validity of a statutory provision and pure question of law . . . is [ ] generally appropriate for pre-enforcement review in a declaratory judgment action." *Robinson Twp., Wash. Cnty. v. Commonwealth*, . . . 83 A.3d 901, 990 ([Pa.] 2013); *see also Bayada Nurses, Inc. v. Dep't of Lab. & Indus.*, . . . 8 A.3d 866 ([Pa.] 2010).

*Pa. Builders Ass'n v. Dep't of Lab. & Indus.*, 284 A.3d 1287, 1297 (Pa. Cmwlth. 2022). "When . . . challenges - particularly constitutional challenges - are set forth questioning the validity of a statute itself or questioning the scope of a governmental body's action pursuant to statutory authority, then the [DJA] is properly invoked[.]" *Blackwell v. State Ethics Comm'n*, 556 A.2d 988, 991 (Pa. Cmwlth. 1989) (emphasis omitted); *see also P.J.S. v. Pa. State Ethics Comm'n*, 669 A.2d 1105 (Pa. Cmwlth. 1996).

[11] Notably, PSP does not claim Fick lacked standing to seek a declaratory judgment on behalf of others similarly situated. "[I]t is well settled that a court may not raise a party's standing *sua sponte.*" *In re Gun Range, LLC*, 311 A.3d 1242, 1247 (Pa. Cmwlth. 2024), *appeal denied*, 326 A.3d 87 (Pa. 2024), *cert. denied sub nom. Gun Range, LLC v. City of Phila., Pa.*, 145 S.Ct. 1174 (2025).

8

offense; and (2) a permanent injunction that precludes PSP from implementing and enforcing its position that it may deny Act 235 certification based on simple assault convictions.[12]  PFR ¶ 2 (emphasis added); *see also* Amended PFR ¶ 2; Appl. at 18-21 (*Ad Damnum* Clause); PFR *Ad Damnum* Clause; Amended PFR *Ad Damnum* Clause.

On May 3, 2022, the *Fick I* Court preliminarily enjoined PSP from applying the definitions of *crime of violence* and *disqualifying criminal offense* in Section 21.2 of PSP's Regulations to include *simple assault*.  Up to that point, PSP had applied and enforced its interpretation against Fick and others.  Further, Clark's December 17, 2025 representation that PSP would not revoke *Fick's* current Act 235 certification or deny *his* future renewals based on the Interpretation does not

---

[12] Specifically, Fick asks that this Court issue an order: (1) declaring PSP's Interpretation that simple assault is contrary to PSP's definition of *crime of violence*, and enjoining PSP from implementing or enforcing that Interpretation; (2) declaring PSP's Interpretation that simple assault is a crime of violence violates the CDL, and enjoining PSP from implementing or enforcing that Interpretation; (3) declaring that PSP lacks the authority to promulgate Regulations defining *crime of violence* and *disqualifying criminal offense*, and enjoining PSP implementing or enforcing them; (4) declaring that PSP lacks authority to promulgate Regulations regarding denials and revocation or the process to challenge them; (5) declaring that PSP's Interpretation violates article II, section 1 of the Pennsylvania Constitution, PA. CONST. art. II, § 1, and enjoining PSP from implementing or enforcing it; (6) declaring Act 235 unconstitutional pursuant to the vagueness doctrine and rule of lenity, and enjoining PSP from implementing it; (7) declaring Act 235 unconstitutional pursuant to substantive due process, and enjoining PSP from implementing or enforcing it; (8) declaring Act 235 unconstitutional pursuant to procedural due process and enjoining PSP from implementing or enforcing it; (9) declaring PSP's Regulations unconstitutional pursuant to the vagueness doctrine and rule of lenity, and enjoining PSP from implementing or enforcing them; (10) declaring PSP's Regulations unconstitutional pursuant to substantive due process, and enjoining PSP from implementing or enforcing them; and (11) declaring PSP's Regulations unconstitutional pursuant to procedural due process, and enjoining PSP from implementing or enforcing them.  *See* Appl. at 18-21 (*Ad Damnum* Clause); *see also* PFR *Ad Damnum* Clause; Amended PFR *Ad Damnum* Clause.  Fick also seeks the return of his $50.00 bond and the opportunity to file a request for attorney's fees and costs within 60 days after this Court enters final judgment.  *See* Appl. at 21 (*Ad Damnum* Clause).

foreclose the possibility that PSP could deny Fick or *another applicant's* Act 235 certification on that basis.[13]

Because, based on its Interpretation, PSP could still deny Act 235 certifications to Fick or others with simple assault convictions, and PSP could acquiesce to those others if/when they initiate legal action against it, as it did for Fick, the underlying issue is "capable of repetition yet likely to evade review." *Chruby*, 4 A.3d at 771. Accordingly, this litigation is not moot.

## 2. **Summary Relief**

> The standard for granting summary relief turns upon whether the applicant's right to relief is clear. Summary relief on a petition for review is similar to the relief provided by a grant of summary judgment. [*See* Rule] 1532, Official Note. Summary judgment is appropriate where, after the close of pleadings, "there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report." [Pennsylvania Rule of Civil Procedure,] Pa.R.C[iv].P. 1035.2(a). The record is to be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.[14]

*Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017) (footnote omitted).

Regarding Act 235, the *Fick I* Court comprehensively explained:

> Section 4 of [Act 235] establishes a lethal weapons training program administered by the Commissioner. [*See*] 22 P.S. § 44. Section 5 of [Act 235] empowers the

---

[13] *See also* PSP Br. at 15 ("There is no risk to [*Fick's*] ongoing certification based upon *his* past simple assault charge." (Emphasis added)).

[14] Because the parties agree that there are no genuine issues of material fact, this Court need only determine whether Fick's right to relief is clear under Act 235 and PSP's associated Regulations. *See* Appl. ¶ 40 ("The issues before this Court are solely legal in nature . . . ."); *see also* PSP Br. at 12 ("[T]here is no genuine dispute of material fact[.]").

Commissioner to certify training schools and instructors for the program, and also "to make such rules and regulations and to perform such other duties as may be reasonably necessary or appropriate to implement the education and training program." 22 P.S. § 45. Any "privately employed agent" must obtain Act 235 certification before carrying a lethal weapon on duty or while traveling to or from work. Section 8(a) of [Act 235], 22 P.S. § 48(a). Doing so without a certification is a misdemeanor punishable by up to one year of imprisonment, a $1,000[.00] fine, or both. [*See*] Section 9(a) of [Act 235], 22 P.S. § 49(a).

There are two steps to applying for Act 235 certification. In the first step, under Section 6 of Act 235, an applicant must apply for and receive a "certificate of qualification" [(qualification certification)] before he may enroll in a training program. 22 P.S. § 46. Section 6 [of Act 235] states, in relevant part:

(a) Any person desiring to enroll in such program shall make application to [PSP], on a form to be prescribed by [PSP].

. . . .

(d) The fingerprints of the applicant shall be examined by [PSP] and the Federal Bureau of Investigation **to determine if he has been convicted of** or has pleaded guilty or nolo contendere to a **crime of violence** . . . .

. . . .

(f) After the application has been processed and **if the [C]ommissioner determines that the applicant** is [18] years of age and **has not been convicted of** or has not pleaded guilty or nolo contendere to **a crime of violence**, and has satisfied any other requirements prescribed by him under his powers and duties pursuant to [S]ection 5 [of Act 235], [**he**] **shall issue a certificate of qualification** which shall entitle the applicant to enroll in an approved program.

11

22 P.S. § 46 (emphasis added[;] footnote omitted). **Act 235 does not define "crime of violence" or any related terms**.

Once an applicant receives a certification of qualification under Section 6 [of Act 235], and enrolls in and completes an approved training program, the applicant receives a "certificate" allowing him to carry a lethal weapon incident to employment. Sections 4(b) and 7(b) of [Act 235], 22 P.S. §§ 44(b), 47(b). Those who obtain a certificate must carry a copy with them on the job and must renew the certificate every five years. [*See*] Section 79(c), (d) of [Act 235], 22 P.S. § 47(c), (d).

*Fick I*, slip op. at 3-4.

The *Fick I* Court expounded:

After Act 235 was enacted on October 10, 1974, but before its effective date of December 31, 1975, PSP promulgated [R]egulations for Act 235. *See* Pa. Code §§ 21.1-21.61.[15] The [R]egulations define the following relevant terms:

. . . .

*Crime of violence*--**Any of the following crimes**, or an attempt, solicitation or conspiracy to commit any of the same in this Commonwealth or elsewhere, namely: murder, rape, aggravated assault, robbery, burglary, entering a building with intent to commit a crime therein, kidnapping, voluntary manslaughter, involuntary deviate sexual intercourse, arson, recklessly endangering another person[16] or terroristic threats.

---

[15] The Regulations were published in the Pennsylvania Bulletin on September 12, 1975, 5 Pa.B. 2362, and an amendment was published November 2, 1984, 14 Pa.B. 3926. *See* 37 Pa. Code Ch. 21, "Source."

[16] Section 2705 of the Crimes Code states regarding *recklessly endangering another person* occurs when "[a] person . . . recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. Section 2301 defines *serious bodily injury* as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. These definitions distinguish the crime of *recklessly*

12

*Disqualifying criminal offense--*

(i) A conviction for a crime of violence shall be a disqualifying criminal offense; or

(ii) A conviction for **any other crime** may be a disqualifying criminal offense. Note: [c]onviction of a criminal offense which is equivalent to subparagraphs (i) and (ii) may constitute a disqualifying criminal offense.

37 Pa. Code § 21.1.

Relevant to this case, [Section] 21.11 [of PSP's Regulations, 37 Pa. Code § 21.11,] establishes the requirements for applicants who wish to become certified agents. It provides, in relevant part:

. . . .

A person who desires to be certified by the Commissioner under [Act 235] must satisfy the following requirements:

. . . .

(5) *Criminal conviction standard*. A review must be made of the applicant's criminal history record, if any, to determine qualification for certification. The criminal history review shall be based upon the record of conviction, if any, generated by the classification and subsequent examination of the applicant's fingerprints or another valid method. **A person whose criminal history record evidences a conviction for a disqualifying criminal offense may be barred from certification under** [**Act 235**].

(Emphasis added). . . .

The [R]egulations also provide [a] procedure for challenging an adverse determination by the Commissioner. *See* [Sections 21.51-21.61 of PSP's

---

*endangering another person* used in this Regulation from the reference to *recklessly causes bodily injury* in the statute that defines simple assault. *See* 18 Pa.C.S. § 2701(1).

13

> Regulations,] 37 Pa. Code §§ 21.51-21.61. Any applicant who receives an adverse determination may request an administrative hearing before a hearing examiner appointed by the Commissioner. [*See* Sections 21.53-21.54 of [] PSP's Regulations,] 37 Pa. Code §§ 21.53-[21].54. The hearing examiner makes a recommendation to the Commissioner, who then makes a final decision. [*See*] 37 Pa. Code § 21.61.

Slip op. at 5-6 (original bold emphasis omitted; bold and italic emphasis added; footnotes omitted).

Fick argues that his right to relief is clear because PSP's Interpretation violates article II, section 1 of the Pennsylvania Constitution's Non-Delegation Doctrine[17] and the CDL and is contrary to PSP's Regulations, and also violates the due process guarantees in article I, section 1 of the Pennsylvania Constitution[18] and the Fourteenth Amendment to the U.S. Constitution (Fourteenth Amendment).[19]

a. Article II, Section 1 of the Pennsylvania Constitution (Non-Delegation Doctrine)

Fick argues that he has a clear right to relief because PSP's Interpretation violates article II, section 1 of the Pennsylvania Constitution's non-delegation doctrine. Specifically, Fick contends that the General Assembly did not authorize the Commissioner to promulgate regulations that define *crime of violence*, or to add disqualifying criminal offenses or regulate certification denials or revocations and related hearings and appeals. PSP responds that the General Assembly properly delegated to PSP (a criminal justice agency) the authority to determine the types of crimes the convictions for which would disqualify an applicant from Act 235 certification qualification, and to regulate certification denials or revocations and challenges thereto.

---

[17] PA. CONST. art. II, § 1.

[18] PA. CONST. art. I, § 1.

[19] U.S. CONST. amend. XIV.

14

Preliminarily, "the General Assembly may exercise its far-reaching police power in the public interest in a manner that affects constitutional rights, though any such exercise is itself subject to constitutional limitations and judicial review." *Crawford v. Commonwealth*, 326 A.3d 850, 857 (Pa. 2024). Moreover,

> "[o]ur law provides a strong presumption that legislative enactments . . . do not violate the [Pennsylvania] Constitution." *Ass'n of Settlement Cos. v. Dep't of Banking*, 977 A.2d 1257, 1261 (Pa. Cmwlth. 2009) (en banc). The burden to overcome the presumption is heavy: "[A] statute will not be declared unconstitutional unless it *clearly, palpably,* and *plainly* violates the [Pennsylvania] Constitution. All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth,* . . . 877 A.2d 383, 393 ([Pa.] 2005) (emphasis in original) (citation omitted).

*Caba v. Weaknecht*, 64 A.3d 39, 49 (Pa. Cmwlth. 2013).

Relevant here, article II, section 1 of the Pennsylvania Constitution, commonly referred to as the Non-Delegation Doctrine, provides: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." PA. CONST. art. II, § 1. This Court has explained:

> It is beyond cavil that article II, section 1 of the Pennsylvania Constitution both vests the General Assembly with exclusive authority to make law and **bars it from delegating th**[e] **authority** [**to make law**] **to other entities**. *State Bd. of Chiropractic Exam'rs v. Life Fellowship of Pa.,* . . . 272 A.2d 478, 480 ([Pa.] 1971). Even so, the General Assembly "may, where necessary, confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act." *Belovsky v. Redevelopment Auth. of City of Phila.,* . . . 54 A.2d 277, 284 ([Pa.] 1947). "The principal limitations on this power are twofold: (1) **the**

15

> **basic policy choices must be made by the [l]egislature**; and (2) the legislation **must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions**." *Gilligan v. Pa. Horse Racing Comm'n*, . . . 422 A.2d 487, 489 ([Pa.] 1980) (cleaned up); *accord Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, . . . 161 A.3d 827, 834 ([Pa.] 2017) (cleaned up) (such legislation must "contain some intelligible principle to which the person or body authorized to act is directed to conform"). **This "rule requiring express legislative delegation is tempered by the recognition that [a governmental body] is invested with the implied authority necessary to the effectuation of its express mandates**." *Com[monwealth] v. Beam*, . . . 788 A.2d 357, 360 ([Pa.] 2002); *accord Gilligan*, 422 A.2d at 489 (the [N]on-[D]elegation [D]octrine **does not mandate that "all details of administration must be precisely or separately enumerated in the statute"**); *see also Beam*, 788 A.2d at 361 (quoting *City of Columbia v. B[d.] of Health & Env't Control*, . . . 355 S.E.2d 536, 538 ([S.C.] 1987)) ("The delegation of authority to an administrative agency is construed liberally when the agency is concerned with the protection of the health and welfare of the public.").

*Grant Schmidt, Shot Tec, LLC v. Paris*, 344 A.3d 78, 89-90 (Pa. Cmwlth. 2025) (emphasis added). "While an agency's powers must be conferred by the legislature, they may be conferred not only by express statutory authorization, but also by necessary implication." *Our Lady of Victory Cath. Church v. Dep't of Hum. Servs.*, 153 A.3d 1124, 1129 (Pa. Cmwlth. 2016).

> "To determine whether a regulation is adopted within an agency's granted power, [this Court] look[s] for statutory language authorizing the agency to promulgate the legislative rule and examine that language to determine whether the rule falls within the grant of authority." *Marcellus Shale Coal[.] v. Dep[']t of Env[']t Prot[.]*, 216 A.3d 448, 459 (Pa. Cmwlth. [2019]) . . . (citing *Slippery Rock [Area Sch. Dist. v. Unemployment Comp. Bd. of Rev.]*, 983 A.2d [1231,] 1239-41 [(Pa. 2009)]). [This Court] consider[s] "the purpose of the statute and its reasonable effect" and whether "the regulation is

16

consistent with the enabling statute." *Id*. "Clearly[,] the legislature would not authorize agencies to adopt binding regulations inconsistent with the applicable enabling statutes." *Slippery Rock*, 983 A.2d at 1241.

*Hommrich v. Pa. Pub. Utils. Comm'n*, 231 A.3d 1027, 1034 (Pa. Cmwlth. 2020), *aff'd sub nom.*, *Hommrich v. Commonwealth*, 245 A.3d 637 (Pa. 2021).

In the instant matter, the General Assembly declared that Act 235's purpose is "to provide for the education, training[,] **and certification** of [] privately employed agents who, as an incidence to their employment, carry lethal weapons **through a program administered or approved by the Commissioner of** [**PSP**]." Section 2(b) of Act 235, 22 P.S. § 42(b) (emphasis added); *see also* 22 P.S. § 43 (*program* defined). Section 6 of Act 235 broadly specifies that certification qualification applications must be made to PSP on forms PSP prescribes and accompanied by documents PSP requires, and

> if the Commissioner determines that the applicant **is** [**18**] years of age **and has not been convicted of** . . . **a crime of violence**, **and has satisfied any other requirement prescribed by** [**the Commissioner**] **under his powers and duties pursuant to** [S]**ection 5 of Act 235**, he **shall issue a certificate of qualification** which shall entitle the applicant to enroll in an approved program.

22 P.S. § 46(f) (bold and underline emphasis added). Likewise, Section 4(b) of Act 235 specifies that "upon satisfactory completion of such program, [the applicant] shall be entitled to certification by the [C]ommissioner." 22 P.S. § 44(b).

Although in Section 5 of Act 235, the General Assembly appears to limit the Commissioner's powers and duties to implementing and administering *Act 235 education and training courses*, *see* 22 P.S. § 45,[20] where Act 235's clear

---

[20] In Section 5(10) of Act 235, the General Assembly authorized PSP to, *inter alia*, "make such rules and regulations and to perform such other duties as may be reasonably necessary or appropriate *to implement the education and training program*." 22 P.S. § 45(10) (emphasis added).

purpose is not only *education and training*, but also *certification* by the PSP Commissioner, *see* 22 P.S. § 42(b), and the General Assembly clearly created an extensive statutory framework wherein it made PSP responsible for implementing, overseeing, and enforcing the Act 235 certification, renewal, and revocation processes, *see* Sections 7, 8(c) of Act 235, 22 P.S. §§ 47, 48(c), PSP's authority to promulgate regulations addressing the handling of adverse determinations related thereto is necessarily implied. *See Beam* (wherein the Pennsylvania Supreme Court held that the enabling statute was sufficiently broad to confer upon the Department of Transportation the implied capacity to seek redress not expressly addressed therein); *see also Off. of Open Recs. v. Centre Twp.*, 95 A.3d 354 (Pa. Cmwlth. 2014) (wherein this Court concluded that the authority to conduct *in camera* document reviews could be reasonably derived from the statutory powers granted to the Office of Open Records).

In addition, Section 102(a) of the Administrative Agency Law authorizes agencies to promulgate regulations implementing the provisions thereof, which includes establishing hearing and appeal procedures for administrative adjudications. *See* 2 Pa.C.S. § 102(a); *see also* Sections 501-508, 701-704 of the Administrative Agency Law, 2 Pa.C.S. §§ 501-508, 701-704. In fact, with the exception of proceedings not relevant here, *see* 2 Pa.C.S. § 501(a), Section 701(a) of the Administrative Agency Law allows appeals from agency decisions even if a statute declares that no review or appeal is permitted. *See* 2 Pa.C.S. § 701(a). Accordingly, this Court concludes that the General Assembly made the necessary policy choices and PSP was subject to adequate standards to guide and restrain the exercise of its delegated administrative functions in addressing certification denials or revocations and hearings and appeals related thereto, and PSP did not exceed that authority here.

However, the General Assembly did not expressly or by implication authorize PSP to modify its statutorily-supplied qualification certification criteria. The General Assembly clearly made the policy determination that the Commissioner shall grant qualification certification to any person who is 18 or older, who has not been convicted of a crime of violence. *See* 22 P.S. § 46(f). PSP defined *crime of violence* in its Regulations, which it was authorized to do.[21] In addition, in Section 11(5) of PSP's Regulations, PSP expanded the crimes that may bar Act 235 qualification certification beyond crime of violence to "**a disqualifying criminal offense** . . . ." 37 Pa. Code § 21.11(5) (emphasis added). PSP defines *disqualifying criminal offense* to include a conviction for a **crime of violence**, *see* 37 Pa. Code § 21.1(i), "**or** . . . **any other crime** . . . ." 37 Pa. Code § 21.1(ii) (bold, underline, and italic emphasis added). Thus, PSP created a catch-all under which it could add crimes the convictions for which it could deny Act 235 qualification certification *beyond* crimes of violence to *any other crime*, which, in Fick's case, PSP interpreted to include simple assault.[22] *See* 37 Pa. Code § 21.1.

In concluding that Fick may prevail on the merits relative to the Expedited PI Application, the *Fick I* Court recognized:

---

[21] Agencies may define undefined statutory terms, provided they are not inconsistent with their enabling statutes. *See Hommrich*; *see also Marcellus Shale Coal.* Here, while the General Assembly did not expressly authorize the Commissioner to define *crime of violence*, PSP properly promulgated Section 21.1 of PSP's Regulations, *see Marcellus Shale Coal.*, to include "rape, aggravated assault, robbery, burglary, entering a building with intent to commit a crime therein, kidnapping, voluntary manslaughter, involuntary deviate sexual intercourse, arson, recklessly endangering another person or terroristic threats[,]" and the attempt, solicitation, or conspiracy to commit any of those crimes. 37 Pa. Code § 21.1. That definition is relatively consistent with how the General Assembly defined *crime of violence* in Section 9714(g) of the Sentencing Code. *See* 42 Pa.C.S. § 9714(g). Notably, however, neither definition references nor incorporates simple assault. *See Fick I*, slip op. at 13 n.7 ("PSP's promulgated definition of [*crime of violence*] [] obviously does not include simple assault.").

[22] In *Fick I*, PSP appeared to have abandoned its initial position that simple assault is a crime of violence. At oral argument before this Court, PSP reiterated its position that it does not consider simple assault a crime of violence.

19

Whatever the General Assembly meant by "crime of violence," it cannot plausibly have meant "any . . . crime." That reading would fail to give effect to the words - "of violence" - the General Assembly actually used. "A [c]ourt's duty is to give effect to the legislature's intent and to give effect to all of a statute's provisions." *Crown Castle* [*NG E. LLC v. Pa. Pub. Util. Comm'n,*] 234 A.3d [665,] 674 [(Pa. 2020)]. Thus, [Fick] is likely to prevail on his claim that this broad regulatory definition is unlawful, because it appears plainly inconsistent with the unambiguous intent of the General Assembly: that not merely a "crime," but a "crime of violence," is disqualifying for Act 235.

Slip op. at 14-15. This Court agrees that the General Assembly specifically limited its criminal conviction standard to crimes *of violence* and, thus, did not intend for the Commissioner to deny qualification certification based on a conviction for *any other* crime.

Indeed, "a regulation that is at variance with a statute is ineffective to change the statute's meaning." *Geisinger Health Sys*[.] *v. Bureau of Workers' Comp*[.] *Fee Rev*[.] *Hearing Off*[.] *(SWIF)*, 138 A.3d 133, 139 (Pa. Cmwlth. 2016). "That is so because 'the power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the Legislature as expressed by the statute.'" *Id*. (quoting *Volunteer Firemen's Relief Ass*[*'n*] *of the City of Reading v. Minehart*, . . . 227 A.2d 632, 635-36 ([Pa.] 1967)). "When an agency adopts regulations at variance with the statute, the regulations, and not the statute, fall by the wayside." *Id*. (citing *Union Elec*[.] *Corp*[.] *v. B*[*d.*] *of Prop*[.] *Assessment, Appeals* [*&*] *Rev*[.] *of Allegheny C*[*nty.*], 721 A.2d 823 (Pa. Cmwlth. 1998), *rev'd on other grounds*, . . . 746 A.2d 581 ([Pa.] 2000)).

*Hommrich*, 231 A.3d at 1035.

Even liberally construing Act 235, as this Court must because PSP "is concerned with the protection of the health and welfare of the public[,]" *Grant Schmidt, Shot Tec, LLC*, 344 A.3d at 90 (quoting *City of Columbia*, 355 S.E.2d at

20

538), this Court concludes that only a *crime of violence*, as PSP defined that term in Section 21.1 of its Regulations, can be a *disqualifying criminal offense*.[23] PSP's denials for *any other crime* (and, thus, simple assault) exceeds the bounds of the General Assembly's policy determination and places the Regulation at odds with Act 235. As such, the implication that PSP may deny qualification certification for anything other than a *crime of violence* (i.e., its Interpretation and the "<u>or</u> . . . <u>any</u> <u>other crime</u>" portion of PSP's Regulations, 37 Pa. Code § 21.1(ii) (emphasis added)) must "fall by the wayside." *Hommrich*, 231 A.3d at 1035 (quoting *Geisinger*, 138 A.3d at 139).[24, 25]

Therefore, this Court concludes that the General Assembly made the necessary policy choices and specified standards to guide and restrain PSP in exercising its delegated administrative functions; however, PSP exceeded that authority in this instance. Fick has stated a clear right to declarations from this Court

---

[23] Consistent with this Court's interpretation, at oral argument before this Court, PSP's counsel represented that the Regulation's reference to *disqualifying criminal offense* refers back only to *crime of violence*, as PSP defined that term in Section 21.1 of its Regulations.

[24] In light of this Court's conclusion that the General Assembly did not intend for PSP to promulgate Regulations to disqualify Act 235 applicants for anything other than crimes of violence (as PSP defined them), this Court need not further address whether the *disqualifying criminal offense* portion of PSP's Interpretation is contrary to its own Act 235 Regulations or whether PSP properly promulgated that portion of the Interpretation under the CDL.

[25] In addition to the above, this Court observes that PSP included a notation in its *disqualifying criminal offense* definition that only *any other crime* "which is equivalent to subparagraphs (i) [(relating to a crime of violence)] and (ii) [(relating to any other crime)] may constitute a disqualifying criminal offense." 37 Pa. Code § 21.1(ii). Adopting the *Fick I* Court's reasoning that the General Assembly did not intend for the term *crime of violence* to include *any other crime*, together with PSP's definition limiting *any other crime* to a crime of violence, this Court concludes that the only criminal offense that disqualifies an applicant from Act 235 certification is a crime of violence, as the General Assembly clearly stated. Although a strict reading of PSP's definition nonsensically makes *any other crime* equivalent to *any other crime* a disqualifying criminal offense, in light of this Court's conclusion that only a crime of violence is a disqualifying criminal offense, PSP's definition of disqualifying criminal offense in Section 21.1 of the Regulations is mere surplusage. Accordingly, PSP's Interpretation that simple assault can be a disqualifying criminal offense is contrary to its own Regulations.

that: (1) PSP properly promulgated Regulations addressing qualification certification denials or revocations and hearings and appeals related thereto; (2) a *crime of violence* - as PSP defined the term - is the sole conviction basis on which PSP may deny an Act 235 qualification certification (i.e., the only disqualifying criminal offense under Section 21.1 of PSP's Regulations is a crime of violence); and (3) simple assault is not a *crime of violence* as PSP defined that term in Section 21.1 of its Regulations. Accordingly, based on the above, Fick's Application is granted in part.

b. Article I, Section 1 of the Pennsylvania Constitution and Fourteenth Amendment (Due Process)

Fick further contends that he has a clear right to relief because PSP's Interpretation violates his due process rights afforded by article I, section 1 of the Pennsylvania Constitution and the Fourteenth Amendment.[26] Specifically, Fick asserts that PSP's Interpretation is inconsistent with the promulgated definition of a *crime of violence*, which requires applicants to guess - subject to penalties of perjury and misdemeanor violations - whether they had been convicted of a crime of violence or a disqualifying criminal offense. Therefore, according to Fick, PSP's

---

[26] Fick claims that PSP waived its due process responses by failing to include them in PSP's Answer to the Application. Notably, however, Fick only makes broad references to his due process arguments in his Application, and does not specifically object to PSP's potential commingling of the enforcement and adjudicative functions therein. *See* Application at 17, 20-21. Instead, he particularized that argument in his memorandum of law in support of the Application. *See* Memorandum of Law at 26-28. In the Answer, PSP denied allegations that it deprived Fick of his procedural due process rights. *See* Answer at 17, 20-21. Moreover, although PSP did not specifically respond to Fick's commingling argument, it included due process arguments in its opposing brief. Under such circumstances, PSP did not waive any response to Fick's due process arguments.

22

Interpretation is void for vagueness[27] and the corresponding rule of lenity,[28] and violates due process. Fick further argues that the General Assembly failed to include in Act 235 procedures to address denials or revocations of applications or hearings and appeals related thereto when it was clearly aware of how to do so and, thus, PSP's Regulations violate applicants' substantive and procedural due process rights. Fick adds that PSP's Regulations that allow the Commissioner to deny or revoke a certification, then appoint a hearing examiner to conduct a hearing and issue findings and conclusions that the Commissioner may ignore, violates procedural due process.

PSP maintains that there are no vagueness or lenity concerns because it specifically defined *crime of violence* in the Regulations to include enumerated offenses that an applicant can see and determine whether he/she has been so convicted. PSP adds that because Fick will maintain his Act 235 certification despite his simple assault conviction, Fick has not been deprived of any property right that invokes either substantive or procedural due process.

Having concluded that PSP erred by applying the Interpretation, and PSP may only deny an Act 235 qualification application for a *crime of violence* as PSP defined that term in Section 21.1 of its Regulations, this Court agrees with PSP that the *crime of violence* portion of PSP's interpretation is neither void for vagueness nor violates the rule of lenity. Act 235 qualification certification applicants are clearly on notice that if they have been convicted of a *crime of violence* as defined in Section 21.1 of PSP's Regulations, they will not qualify for a

---

[27] "A statute or regulation is unconstitutionally vague when its terms are not sufficiently specific to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Pa. Virtual Charter Sch. v. Dep't of Educ.*, 244 A.3d 885, 895 (Pa. Cmwlth. 2020) (quoting *Nelson v. State Bd. of Veterinary Med.*, 863 A.2d 129, 138 (Pa. Cmwlth. 2004)).

[28] The rule of lenity is a fairness principle that penal laws must provide clear and unequivocal warnings of unacceptable conduct, and any ambiguity therein will be construed in favor of the defendant and against the government. *See McGrath v. Bureau of Pro. & Occupational Affs.*, 146 A.3d 310 (Pa. Cmwlth. 2016), *aff'd sub nom.*, *McGrath v. Bureau of Pro. & Occupational Affs., State Bd. of Nursing*, 173 A.3d 656 (Pa. 2017).

23

certification qualification and, thus, cannot move forward with Act 235 training and, eventually, Act 235 certification.

However, whether PSP's Regulations violate an applicant's substantive and procedural due process rights is less clear. "[S]ubstantive due process is the 'esoteric concept interwoven within our judicial framework to guarantee fundamental fairness and substantial justice.'" *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1042 (Pa. 2019) (quoting *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 946 (Pa. 2004)).

> "[F]or substantive due process rights to attach[,] **there must first be the deprivation of a property right or other interest that is constitutionally protected**. Pursuant to [a]rticle I, [s]ection 1 of the Pennsylvania Constitution,[29] all persons within this Commonwealth possess a protected interest in the practice of their profession. Thus, after a license to practice a particular profession has been acquired, the licensed professional has a protected property right in the practice of that profession. Nevertheless, the right to practice a chosen profession is subject to the lawful exercise of the power of the [s]tate to protect the public health, safety, welfare, and morals by promulgating laws and regulations that reasonably regulate occupations.

*Khan*, 842 A.2d at 946 (emphasis added; citations omitted).

Relative to procedural due process guarantees, the Fourteenth Amendment declares, in relevant part, that no state "shall . . . **deprive any person of** life, **liberty**, **or property**, **without due process of law**[.]" U.S. CONST. amend. XIV, § 1 (emphasis added). This Court has explained:

---

[29] Article I, section 1 of the Pennsylvania Constitution provides that "[a]ll men . . . have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1.

Under both our federal and state constitutions, the basic elements of procedural due process are "adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Commonwealth v. Turner*, . . . 80 A.3d 754, 764 ([Pa.] 2013). The [U.S.] Supreme Court has consistently held that "some form of hearing" is required before a final deprivation of a protected interest, although the exact nature and mechanism of the required procedure will vary based upon the unique circumstances surrounding the controversy. *Mathews v. Eldridge*, 424 U.S. 319, 333 . . . (1976); *C.S.*, 184 A.3d at 607. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 . . . (1965).

*S.F. v. Pa. Dep't of Hum. Servs.*, 298 A.3d 495, 510 (Pa. Cmwlth. 2023) (footnote omitted); *see also* Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504 ("No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard."). "Due process is fully applicable to administrative hearings involving **substantial property and/or liberty rights**." *S.F.*, 298 A.3d at 510 (emphasis added). Ultimately, the burden is not on the agency to prove the validity of a regulation, but on the challenger. *See Sutton v. Bickell*, 220 A.3d 1027 (Pa. 2019).

Therefore, Fick must first show that an Act 235 qualification certification - the *preliminary* step that allows an applicant to proceed to Act 235 education and training *before* eventually being eligible for certification under Act 235 - is a property interest to which substantive and procedural due processes attach.[30] He has not done so. A petitioner fails to state a claim upon which relief

---

[30] Although Pennsylvania courts have not directly addressed whether an Act 235 certification is a constitutionally protected liberty or property right subject to due process protections, this Court has held that *revocation* of a lethal weapons license implicates a liberty interest sufficient to trigger procedural due process protections. *See Caba v. Weaknecht*, 64 A.3d

25

may be granted if he does not identify a liberty interest or property right subject to due process. *See Robins v. Harry*, 344 A.3d 889 (Pa. Cmwlth. 2025).

Even if an Act 235 qualification certification is a qualifying liberty interest or property right, then this Court must determine whether the due process PSP's Regulations offers is fair.

> A fair trial conducted in a fair tribunal is a basic and fundamental requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. Courts have recognized that "the mere potential for bias or the appearance of non-objectivity may be sufficient to constitute a violation" of due process. *Kuszyk v. Zoning Hearing B[d.] of Amity T[wp.]*, 834 A.2d 661, 665 (Pa. Cmwlth. 2003) . . . . A question of due process reasonably involves an inquiry into the nature of the process actually provided. *Lyness v. State B[d.] of Med[.]*, . . . 605 A.2d 1204 ([Pa.] 1992); *Stone [&] Edwards Ins[.] Agency, Inc. v. Dep[ʾt] of Ins[.]*, . . . 636 A.2d 293, 297 [(Pa. Cmwlth.)], *affʾd*, . . . 648 A.2d 304 ([Pa.] 1994).

*HYK Constr. Co., Inc. v. Smithfield Twp.*, 8 A.3d 1009, 1018 (Pa. Cmwlth. 2010).

Pennsylvania courts have held that the due process right to a fair and impartial tribunal under article I of the Pennsylvania Constitution is violated when members of a board that make a decision to bring an enforcement action also participate in the final adjudication thereof. *See Lyness*; *see also HYK Constr.* The *Stone & Edwards* Court clarified that a single administrative agency may exercise prosecutorial and adjudicative functions if there are walls of division that clearly separate those functions. *See id.*; *see also HYK Constr.* Fick had the burden of

---

39 (Pa. Cmwlth. 2013). Pennsylvania courts have also recognized that various professional certifications constitute property rights entitled to due process protection, including teaching certificates and medical licenses. *See N.T. v. Depʾt of Educ.*, 260 A.3d 1016 (Pa. Cmwlth. 2021); *see also Shah v. State Bd. of Med.*, 589 A.2d 783 (Pa. Cmwlth. 1991). Here, however, neither party states nor analyzes whether an Act 235 *qualification certification* - the <u>preliminary</u> step <u>before education and training</u> - is a liberty or property interest to which substantive and procedural due processes attach.

26

showing PSP's enforcement and adjudication procedures violate due process. *See Sutton*. There is no record evidence that PSP impermissibly commingles its prosecutorial and administrative functions and, thus, violates an applicant's procedural due process rights. Fick's mere declaration to that effect does not constitute record evidence. Accordingly, this Court cannot declare that Fick has a clear right to relief under article I, section 1 of the Pennsylvania Constitution and/or the Fourteenth Amendment.

### 3. **Permanent Injunction**

With the exception of circumstances not applicable here, declaratory judgments stand alone or can be "additional and cumulative to all other available remedies . . . ." 42 Pa.C.S. § 7541(b); *see also Firearms Owners Against Crime - Inst. for Legal, Legis. & Educ. Action v. Paris*, 335 A.3d 1019, 1041 (Pa. 2025) (There is an "established precept that declaratory judgments have independent value and can be provided apart from other types of relief.").

> "[T]he purpose of awarding declaratory relief is to finally settle and make certain the rights or legal status of parties." *Geisinger Clinic v. Di Cuccio*, . . . 606 A.2d 509, 519 ([Pa. Super.] 1992) . . . . A declaratory judgment, unlike an injunction, does not order a party to act. This is so because "the distinctive characteristic of the declaratory judgment is that the declaration stands by itself; that is to say, no executory process follows as of course." *Petition of Kariher*, . . . 131 A. 265, 268 ([Pa.] 1925).

*Eagleview Corp. Ctr. Ass'n v. Citadel Fed. Credit Union*, 150 A.3d 1024, 1029-30 (Pa. Cmwlth. 2016). Although this Court may grant declaratory *and* injunctive relief "whenever necessary and proper[,]" *see* Section 7538(a) of the DJA, 42 Pa.C.S. § 7538(a), this Court concludes that a permanent injunction is unnecessary here, where PSP is bound by this Court's declarations.

27

**Conclusion**

Based on the foregoing, this Court grants the Application, in part, holding that Fick has a clear right to declaratory relief and declares that: (1) PSP's Interpretation violates article II, section 1 of the Pennsylvania Constitution's Non-Delegation Doctrine; (2) a crime of violence is the sole conviction basis on which PSP may deny an Act 235 qualification certification (i.e., the only disqualifying criminal offense under Section 21.1 of PSP's Regulations is a crime of violence); and (3) simple assault is not a *crime of violence* as PSP has defined that term in Section 21.1 of its Regulations. The Application is denied in all other respects.

_____

ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nathaniel Fick,
    Petitioner

    v.

Lieutenant Colonel George Bivens,
Acting Commissioner, Pennsylvania
State Police,
    Respondent

:
:
:
:
:
:
:
:
:
:
:
:

No. 51 M.D. 2022

## O R D E R

AND NOW, this 28th day of May, 2026, Nathaniel Fick's (Fick) Application for Summary and Special Relief Pursuant to Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b) (Application) is **GRANTED**, **in part**, and this Court declares: (1) Lieutenant Colonel George Bivens, Acting Commissioner Pennsylvania State Police's (PSP) interpretation that simple assault is a crime of violence or a disqualifying criminal offense violates article II, section 1 of the Pennsylvania Constitution, PA. CONST. art. II, § 1 (Non-Delegation Doctrine); (2) a crime of violence is the sole conviction basis on which PSP may deny a qualification certification under the Lethal Weapons Training Act (Act 235)[1] (i.e., the only disqualifying criminal offense under Section 21.1 of PSP's Regulations, 37 Pa. Code § 21.1, is a crime of violence); and (3) simple assault is not a *crime of violence* as PSP has defined that term in Section 21.1 of its Regulations.

The Application is **DENIED in all other respects**.

The Prothonotary is directed to return the $50.00 security to Fick.

_____
ANNE E. COVEY, Judge

---

[1] Act of October 10, 1974, P.L. 705, *as amended*, 22 P.S. §§ 41-50.1.